1   Kirk Pasich (CA State Bar No. 94242)
    pasichk@dicksteinshapiro.com
2   Steven P. Inman, II (CA State Bar No. 227748)
    inmans@dicksteinshapiro.com
3   DICKSTEIN SHAPIRO LLP
    2049 Century Park East, Suite 700
4   Los Angeles, CA 90067-3109
    Telephone: (310) 772-8300
5   Facsimile: (310) 772-8301

6   Attorneys for Plaintiffs Midland Credit Management, Inc.;
    Midland Funding, LLC; MRC Receivables Corporation; and
7   Midland Funding NCC-2 Corporation

8

9               UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

12  MIDLAND CREDIT MANAGEMENT,          Case No. 09-CV-2187 H (RBB)
    INC., a Kansas corporation; MIDLAND
13  FUNDING, LLC, a Delaware limited    Hon. Marilyn L. Huff
    liability company; MRC RECEIVABLES
14  CORPORATION, a Delaware             **PLAINTIFFS' OPPOSITION TO**
    corporation; and MIDLAND FUNDING    **DEFENDANT'S MOTION TO**
15  NCC-2 CORPORATION, a Delaware       **TRANSFER VENUE**
    corporation,
16                                      [Filed concurrently with the
              Plaintiffs,               Declaration of Brian Frary in Support
17                                      of Plaintiffs' Opposition to
         vs.                            Defendant's Motion to Transfer
18                                      Venue; Plaintiffs' Request for
    TRAUNER, COHEN & THOMAS, LLP,       Judicial Notice in Support of
19  a Georgia limited liability partnership, Opposition to Motion to Transfer
    and Does 1 through 10,              Venue; and Plaintiffs' Evidentiary
20                                      Objections to the Declaration of
                                        Russell S. Thomas]
21            Defendants.
                                        Date:          December 7, 2009
22                                      Time:          10:30 a.m.
                                        Courtroom:     13
23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Midland Credit Management, Inc., Midland Funding, LLC, MRC Receivables Corporation, and Midland Funding NCC-2 Corporation (collectively "Midland") and Defendant law firm Trauner, Cohen & Thomas, LLP ("TCT") freely entered into a contractual debt collection agreement. A forum selection clause in this agreement expressly accords both jurisdiction and venue over disputes "arising out of or relating to" the agreement *exclusively* to the state and federal courts in San Diego, California. Moreover, the agreement establishes California law as the governing law for such disputes. Midland brought this action against TCT, its former legal counsel, to recover damages in connection with debt collection lawsuits that TCT failed to timely file, and amounts TCT wrongfully charged to Midland for court fees that it never actually incurred. The instant dispute clearly arises out of the agreement and should, accordingly, be governed by California law and adjudicated in San Diego, California.

Nonetheless, TCT moves to transfer this case to Georgia, seeking to avoid the forum selection clause. Yet, when TCT entered into an agreement with a mandatory forum selection clause, it did so with full knowledge that it would be required to litigate disputes in San Diego, California. By agreeing to the forum selection clause, TCT contractually waived its right to argue that another forum would be more convenient. Indeed, a valid forum selection clause will be given controlling weight absent exceptional circumstances. Thus, a party seeking to transfer a case to a jurisdiction other than that chosen by the parties in a forum selection clause bears a heavy burden to establish such circumstances by specific evidence. TCT has made no such showing of exceptional circumstances. Nor can it. Indeed, given Midland's choice of San Diego as its forum, the location of the relevant documents and many of the potential witnesses in California, the parties' contacts with California, and the

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

DOCSLA-45815v07

1 applicability of California law to this dispute, this Court is the most convenient forum

2 for this lawsuit.  Thus, there is no compelling reason to disregard the parties' forum

3 selection clause and transfer this case to the Northern District of Georgia.

4 Accordingly, TCT's motion should be denied.

5 **II. STATEMENT OF FACTS**

6     **A. The Collection Agreements**

7     In September 2004, Midland, which has its principal offices in San Diego,

8 retained TCT to collect debts on its behalf.  Declaration of Brian Frary ("Frary Dec."),

9 ¶¶ 3-4.  Midland and TCT negotiated their first collection agreement (the "2004

10 Collection Agreement") by telephone and e-mail, and executed the 2004 Collection

11 Agreement in their respective California and Georgia locations.  Frary Dec., ¶ 5, Ex.

12 A.  As a result of those negotiations, the 2004 Collection Agreement contains a choice

13 of law provision, stating that the agreement is "governed by and is to be interpreted

14 consistent with, the laws of the State of California."  *Id.*

15     In May 2006, Midland and TCT entered into a second collection agreement (the

16 "2006 Collection Agreement"), which superseded the 2004 Collection Agreement.

17 Frary Dec., ¶ 6, Ex. B.  Again, the parties negotiated and executed the 2006 Collection

18 Agreement from their respective locations.  Frary Dec., ¶ 6.  As a result of those

19 negotiations, TCT and Midland provided for a mandatory forum selection clause,

20 which states:  "The parties agree to the exclusive jurisdiction and venue of the

21 applicable state and federal courts in San Diego, California."  Frary Dec., ¶ 6, Ex. B.

22 The 2006 Collection Agreement also contains an expansive choice of law provision

23 that states:

24     The laws of the State of California, without regard to conflicts of law

25     provisions, govern all matters arising out of or relating to this Agreement

26     including, without limitation, its validity, interpretation, construction,

27     performance and enforcement.

28

DICKSTEIN
SHAPIRO LLP

*Id.* In connection with the performance of the agreements, Midland placed accounts with TCT for collection from Midland's California office, and Midland processed the reimbursement payments to TCT that are at the heart of this lawsuit at its California office. Frary Dec., ¶¶ 8, 12. TCT also continued to direct debt collection activities at California residents on behalf of other clients during this period. Midland's Request for Judicial Notice ("RFJN"), ¶¶ 1-2, Exs. 1-2.

**B.    The Audit that Led to this Lawsuit**

In late May 2009, Midland began an audit of TCT's records relating to TCT's handling of Midland's accounts. Frary Dec., ¶ 9. During the audit, Midland obtained and reviewed data from TCT at Midland's California office. *Id.* The audit continued through early July 2009, when TCT withheld key records from Midland. *Id.* In connection with the audit, Midland received at its California office more than 30 boxes of records including pleadings that were never filed, for which TCT had submitted requests for reimbursement of filing fees. Frary Dec., ¶ 10. From the audit, Midland concluded that TCT received funds that it was not entitled to receive in connection with these reimbursement requests. Midland also learned from the audit that a number of cases exist where (a) claims on the accounts may now be barred by the relevant statute of limitations because TCT failed to timely file suit or (b) the possibility of collection or the amount that can be collected has diminished because of the passage of time. Frary Dec., ¶ 13. A client bulletin entitled "IMPORTANT BULLETIN," which TCT sent to employees at Midland's California office on June 29, 2009, confirmed Midland's findings. TCT's bulletin plainly admitted, "you have paid filing fees for lawsuits that have not been filed." Frary Dec., ¶ 16, Ex. C.

**C.    The Instant Lawsuit**

On September 4, 2009, Midland brought this lawsuit against TCT in the Superior Court for the State of California for the County of San Diego, in compliance with the forum selection clause in the 2006 Collection Agreement. Frary Dec., ¶ 6,

Ex. B.  TCT subsequently removed the case to federal court.  TCT now seeks to transfer this lawsuit to the Northern District of Georgia, contrary to the exclusive venue and jurisdiction that the parties contractually agreed to in the 2006 Collection Agreement (the state and federal courts in San Diego, California).

Most of the individuals who possess knowledge related to the allegations of the instant lawsuit, and whose testimony may be relevant to this lawsuit, are located in the San Diego area, including:

- Maria Aldoshina
- Ryan Banda
- Michael Burger
- Lisa Carvalho
- Serdar Dincaslan
- Nicole Laureano
- Alisa Leuthard
- Dana Lopez
- Lance Martin
- Ryan Stanley
- Sushmita Utpala
- Danille Wohlferht
- Ren Zamora

Frary Dec., ¶ 15.

## III.    TRANSFER TO GEORGIA WOULD BE IMPROPER AND CALIFORNIA IS THE MOST CONVENIENT FORUM FOR THIS LAWSUIT

Pursuant to section 1404(a) of Title 28 of the United States Code, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought."  Thus, to prevail on a motion to transfer pursuant to section 1404(a), the moving party must establish two things:  (1) that the proposed transferee forum is one in which the action may have been brought; and (2) that the convenience of the parties and witnesses in the interest of justice favor transfer.  See Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  Moreover, a valid forum selection clause in a contract is a particularly "significant factor" in assessing a section 1404(a) motion to transfer.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir. 2000).

### A.   TCT Has Not Met the Heavy Burden of Establishing that the Parties' Forum Selection Clause Should Not Be Enforced

TCT admits in its motion that forum selection clauses are "prima facie valid and should be enforced unless enforcement is unreasonable."  TCT's Memorandum of Points and Authorities in Support of Defendant's Motion to Transfer ("Def. Mem."), at 4.  However, TCT's motion to transfer conveniently glosses over the standard of proof required to establish that a forum selection clause is unreasonable.  Forum selection clauses should be "given controlling weight in all but the most exceptional cases."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring); accord Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988).

As the Ninth Circuit stated in Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273 (9th Cir. 1984):

> To establish unreasonableness of a forum selection clause the party
> resisting enforcement of the clause has a heavy burden of showing that
> trial in the chosen forum would be so difficult and inconvenient that the
> party effectively would be denied a meaningful day in court.

Id. at 281; see also Chudner v. TransUnion Interactive, Inc., 626 F. Supp. 2d 1084, 1089 (D. Or. 2009) ("A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining

power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.") (citation omitted); *see also Jet Innovations v. Ross*, 2009 WL 2984850, at *3 (C.D. Cal. Sept. 14, 2009).

In *Jet*, the plaintiff sued for breach of contract, declaratory relief, and claim and delivery related to work that the defendants performed for the plaintiff in Michigan. The parties' agreement contained a forum selection clause, pursuant to which the parties consented to "'the exclusive jurisdiction of the state and federal courts sitting in California.'" 2009 WL 2984850, at *2 (quoting agreement). As TCT did here, the defendants removed the case to federal court in the Central District of California and then moved to transfer venue to the Eastern District of Michigan.

In evaluating the defendants' motion, the court noted the well-established rule that forum selection clauses are presumed to be valid, and will be enforced "unless it clearly would be 'unreasonable and unjust, or the clause was invalid for such reasons as fraud or over-reaching.'" *Id.* The court confirmed the grounds for finding a forum selection clause "unreasonable" stating:

> A forum-selection clause is unreasonable if: (1) its incorporation into the
> contract was the result of fraud, undue influence, or overweening
> bargaining power; (2) the selected forum is so gravely difficult and
> inconvenient that the complaining party will for all practical purposes be
> deprived of its day in court; or (3) enforcement of the clause would
> contravene a strong public policy of the forum.

*Id.* The court then denied the defendants' motion on the grounds that the defendants "failed to present evidence to demonstrate that the selected forum is so gravely difficult and inconvenient that defendants 'would effectively be deprived of [their] day in court" or that "enforcement would contravene a strong public policy of the

DICKSTEIN
SHAPIRO LLP

forum in which suit is brought." *Id.* (citations omitted). *Compare Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 499 (2000) (finding forum selection clause inapplicable where enforcement would contravene California's strong public policy "to provide a protective local forum for local franchisees").

In our case, as in *Jet*, while TCT performed work for Midland in another state, the parties' agreement contained a forum selection clause granting exclusive jurisdiction to state and federal courts in California (in our case, San Diego, California). Frary Dec., ¶ 6, Ex. B. Further, here, as in *Jet*, the defendant has presented no evidence to demonstrate that enforcement of the forum selection clause would effectively deprive TCT of its day in court, or that the forum selection clause resulted from fraud or would contravene a strong public policy.[1]

Moreover, TCT (a law firm) and Midland are sophisticated parties and the Court should uphold the mandatory forum-selection clause for which they bargained in their agreement. The forum selection clause language clearly demonstrates the parties' intent to make jurisdiction and venue "exclusive" in the state and federal courts of San Diego. After entering into a freely negotiated agreement with this language, TCT should not now be able to argue that a court in San Diego is an inconvenient forum. As the United States Supreme Court has stated:

> [W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated . . . agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum selection clause unenforceable.

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 16, (1972).

---

[1] Indeed, TCT's sole declaration in support of its motion contains only the barest of conclusions regarding the convenience of litigating this case in this Court, with no proper foundation in personal knowledge. *See* Plaintiffs' Evidentiary Objections to Declaration of Russell S. Thomas ("Plaintiffs' Obj.").

1    TCT knew at the time it signed the agreement that its office and personnel were

2   across the country from the location the parties selected as the exclusive venue to

3   resolve their disputes.  TCT's motion improperly seeks relief contrary to what the

4   parties bargained for, and contrary to the clearly expressed intent of the parties.  *See In*

5   *re Ricoh Corp.*, 870 F.2d 570, 573-74 (11th Cir. 1989) (where a forum selection

6   clause was freely and fairly negotiated, the district court abused its discretion in

7   refusing to enforce it absent an "exceptional situation").

8    TCT does not challenge the above well-established authority regarding the

9   enforcement of forum selection clauses but instead urges that the Court should give

10  less weight to the forum selection clause because Midland's breach of contract claim

11  is only one of nine causes of action in Midland's complaint.  Def. Mem., at 2.  This

12  argument, however, ignores established law that forum selection clauses extend

13  beyond breach of contract claims to encompass other claims relating to the duties set

14  forth in the contract.  *Manetti-Farrow*, 858 F.2d at 514 ("[F]orum selection clauses

15  can be equally applicable to contractual and tort causes of action."); *eBay Inc. v.*

16  *Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1163, n.3 (N.D. Cal. 2009)

17  ("similarly-worded forum selection clauses have been interpreted to cover related tort

18  actions"); *Panetta v. SAP Am., Inc.*, 2005 WL 1774327, at *6 (N.D. Cal. July 26,

19  2005) ("tort claims relating to rights and duties described under a contract apply under

20  a forum-selection clause").

21    Moreover, the forum selection clause in the parties' agreement does not specify

22  only breach of contract claims as falling within its compass.  Frary Dec., ¶ 6, Ex. B.

23  Rather, it is broad and general in its sweep.  The clause appears in a paragraph

24  referring to "*all* matters arising out of or relating to this Agreement."  *Id.*  Midland's

25  allegations against TCT all pertain to TCT's acts and omissions in its performance

26  under its agreements with Midland—its debt collection activities on behalf on

27  Midland.  These activities are, of course, the very subject of the agreement that

28

1   includes the forum selection clause.  The forum selection clause in the agreement

2   should be given controlling weight and TCT's motion should be denied.

3   **B.    The Northern District of Georgia Is an Improper Forum for**

4   **Midland's Lawsuit Against TCT**

5   Contrary to TCT's assertions, Midland could not have brought its lawsuit in the

6   Northern District of Georgia.  The parties contracted that the state and federal courts

7   of San Diego would have "exclusive jurisdiction" over disputes "arising out of or

8   relating to" the 2006 Collection Agreement.  Courts interpret this type of forum

9   selection clause as "mandatory."  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817

10  F.2d 75, 77-78 (9th Cir. 1987) ("Mandatory" language in a forum selection clause is

11  language stating that "the designated courts are the only ones which have

12  jurisdiction.").  Therefore, had Midland brought this lawsuit in the Northern District

13  of Georgia, the lawsuit would have been subject to dismissal for lack of jurisdiction.

14  *See Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1255 (9th Cir.

15  2005) (lawsuit should have been dismissed at the outset for want of jurisdiction when

16  plaintiff failed to comply with a mandatory forum selection clause).  Accordingly, this

17  lawsuit could not properly have been brought in the Northern District of Georgia.

18  TCT has thus failed to establish the first prong of analysis under section 1404(a) and,

19  for this reason as well, TCT's motion to dismiss should be denied.

20  **C.    TCT Has Failed to Demonstrate That the Factors Regarding the**

21  **Convenience of Parties and Witnesses and the Interests of Justice**

22  **Weigh in Favor of Transfer; They Instead Weigh in Favor of**

23  **Maintaining the Action in California**

24  Analysis of the factors regarding the convenience of the parties and witnesses

25  and the interests of justice in the second prong of analysis under section 1404(a) also

26  confirms that the Court should maintain this case in Midland's chosen venue—San

27  Diego, California.

28

9

1      In addition to the presence of a forum selection clause, discussed above, courts

2  generally consider the following factors in deciding whether a transfer will enhance

3  the convenience of the parties and the witnesses:  (1) the plaintiff's choice of forum;

4  (2) the location where the relevant agreements were negotiated and executed; (3) the

5  state that is most familiar with the governing law; (4) the respective parties' contacts

6  with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen

7  forum; (6) the differences in the costs of litigation in the two forums; (7) the

8  availability of compulsory process to compel attendance of unwilling non-party

9  witnesses; and (8) the ease of access to sources of proof.  *See Jones,* 211 F.3d at 498-

10  99.  In addition to these factors, as noted above, courts also consider judicial economy

11  and the interests of justice.  *See DIRECTV, Inc. v. EQ Stuff, Inc.,* 207 F. Supp. 2d

12  1077, 1082 (C.D. Cal. 2002).

13      The burden of establishing that convenience justifies transfer to another district

14  rests upon the moving party, in this case, TCT.  *See Jones,*  211 F.3d at 499.

15  Furthermore, TCT "must make a strong showing of inconvenience to warrant

16  upsetting the plaintiff's choice of forum."  *Bohara v. Backus Hosp. Med. Benefit Plan*,

17  390 F. Supp. 2d 957, 961 (C.D. Cal. 2005).  In other words, even absent a mandatory

18  forum selection clause, a court should refrain from ordering transfer in deference to

19  the plaintiff's choice of forum, unless the convenience factors and the interests of

20  justice strongly favor such a transfer.  *See, e.g., Sec. Investor Prot. Corp. v. Vigman*,

21  764 F.2d 1309, 1317 (9th Cir. 1985).

22      TCT offers little more than bald assertions that this case should be transferred.

23  Having adduced no substantial evidence that the convenience factors weigh in favor of

24  this assertion, TCT has fallen woefully short of establishing that transfer of this action

25  to the Northern District of Georgia is warranted.

26  //

27  //

28

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

DOCSLA-45815v07

1

### 1. TCT has provided insufficient evidence of inconvenience to overcome the substantial weight given to a plaintiff's choice of forum

The plaintiff's choice of forum is accorded substantial weight in analyzing a transfer motion. *Cardozo v. T-Mobile USA, Inc.*, 2009 WL 723843, at *3 (N.D. Cal. Mar. 18, 2009) ("[A] plaintiff's choice of forum carries substantial weight in a motion to transfer venue."); Hon. William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, § 4:760 (2007) ("A plaintiff's choice of forum is accorded substantial weight in proceedings under § 1404(a)."). TCT cannot neutralize the substantial weight that Midland's choice of forum should receive under the law absent a strong showing of inconvenience. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Further, Midland's choice of forum is entitled to even greater deference in this case because its corporate headquarters is located within the district of the chosen forum. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984) ("Greater deference is due because 'a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'") (citation omitted). As demonstrated below, TCT has not made, and cannot make, the necessary strong showing of inconvenience in this matter to overcome the deference given to a resident plaintiff's choice of forum. Thus, TCT has not met its burden of establishing that Midland's choice of San Diego, California as the forum for this lawsuit—a choice mandated by the parties' forum selection clause—should be set aside.

Indeed, as described more fully below, TCT has only introduced evidence regarding the location of its firm and employees. And, as noted above, even that

1    evidence is objectionable and should not be relied upon.  See Plaintiffs' Obj.  TCT has

2    provided no evidence regarding the identity of any specific witnesses who would need

3    to travel and why the testimony of those witnesses is needed.  It also has provided no

4    evidence of any documents that would be difficult to transport to California.  TCT has

5    similarly not identified any non-party witness who is not located in California, much

6    less why such a witness's testimony might be needed.  Instead, TCT makes bare,

7    conclusory statements about "many" unidentified witnesses needing to travel between

8    Georgia and California in a time of frequent air travel.  Thus, TCT has presented

9    insufficient evidence to overcome the substantial weight that courts give to the

10   plaintiff's choice of forum.

## 2. The relevant agreements were negotiated and executed in the parties' respective locations

13   Both the 2004 and the 2006 Collection Agreements were negotiated and

14   executed by the parties in their respective locations.  Frary Dec., ¶¶ 5, 6.  Thus, this

15   factor regarding the location of the negotiation and execution of the contract is neutral

16   and has no effect on the balance of conveniences.

## 3. California is the state that is most familiar with the governing law

19   Both of the agreements that Midland alleges TCT breached, the 2004 Collection

20   Agreement and the 2006 Collection Agreement, contain choice of law provisions

21   stating that California law applies.  Frary Dec., ¶ 5, Ex. A, and ¶ 6, Ex. B.  The 2006

22   Collection Agreement contains a broad choice of law provision stating:

> The laws of the State of California, without regard to conflicts of law
> provisions, govern all matters arising out of or relating to this Agreement
> including, without limitation, its validity interpretation, construction,
> performance and enforcement.

DICKSTEIN
SHAPIRO LLP

Frary Dec., ¶ 6, Ex. B.[2]  All of the allegations in Midland's complaint arise out of or relate to the 2006 Collection Agreement.  For example, paragraph 3.4.2 of the 2006 Collection Agreement specifically addresses the reimbursement of court costs such as those that are at issue in this lawsuit.  *Id.*  Therefore, California law applies to this case.

Additionally, even without the choice of law clause, California law would apply were this case transferred to Georgia because a transferee court must apply the law of the transferor court.  *Ferens v. John Deere Co.*, 494 U.S. 516, 530-31 (1990) (the transferee forum must apply the law of the transferor court); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (a "change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms").

TCT's argument that a court sitting in Georgia would be more familiar with the laws applicable to this lawsuit ignores both this well-established rule and the clear choice of law provisions in the parties' agreements.[3]  Thus, California law will apply, and this Court, sitting in California, is more familiar with California law than a court in Georgia.  Thus, this factor weighs in favor of maintaining this lawsuit in this Court.

### 4.  Both parties have significant contacts with California

Courts also look to the parties' contacts with the plaintiff's choice of forum when evaluating a section 1404(a) motion.  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("In judging the weight to be given [to a plaintiff's choice of forum] . . . consideration must be given to the extent both of the defendant's

---

[2] The choice of law provision in the 2004 Collection Agreement similarly states, "This Agreement is to be interpreted consistent with the laws of the State of California, without regard to conflicts of law provisions."  Frary Dec., ¶ 5, Ex. A.

[3] TCT cites *Tidemann v. Schiff*, 2002 U.S. Dist. LEXIS 25372 (D. Minn. December 18, 2002), in support of its argument that Georgia law applies and that this case should be transferred to Georgia.  However, the court in *Tidemann* expressly pointed out that no forum selection clause was involved in that case, and no indication exists that the case involved a "choice of law" provision either.  *Id.* at *4 ("[T]he instant matter does not concern the presence or absence of a contractual forum selection clause.").

13

business contacts with the chosen forum and of the plaintiff's contacts."); *Jones*, 211 F.3d at 498-99.

TCT's motion portrays TCT as a Georgia law firm operating in Georgia with no substantial contacts with California. However, quite to the contrary, TCT has substantial contacts in California. Midland placed accounts with TCT for collection from its California office. Frary Dec., ¶ 7. TCT also submitted the reimbursement requests that are largely the subject of this lawsuit to Midland at its California office, and the reimbursement requests were processed there. Frary Dec., ¶ 8, 12. TCT also sent data to Midland for review at Midland's California office in connection with Midland's audit of TCT. Frary Dec., ¶ 9.

In addition, TCT conducted debt collection activities targeted at California residents. RFJN, ¶¶ 1-2, Exs. 1-2. Indeed, in each of the past two years, TCT has been sued in federal courts located in California (once in the Southern District of California and once in the Central District of California) in lawsuits related to its debt collection activities directed at California residents. *Id.* Thus, the strength of TCT's contacts with California is not insignificant. And, Midland obviously has strong contacts with California because it has its principal place of business in San Diego and collects debts from debtors in California. Frary Dec., ¶ 3. Therefore, this factor weighs in favor of maintaining this lawsuit in the Southern District of California. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (chosen venue in forum selection clause was "entirely reasonable" given that plaintiffs offices were near chosen venue).

## 5. This action relates to the parties' contacts with California

This action is directly related to TCT's debt collection activities and specifically its debt collection activities on behalf of its California client, Midland. Midland initiated the transfer of funds to TCT from its California office for court fees that TCT improperly charged and retained. Frary Dec., ¶ 12. TCT submitted false reimbursement requests for these funds to Midland's California office, where they

DICKSTEIN
SHAPIRO LLP

1  were processed.  Frary Dec., ¶¶ 8, 12.  Moreover, TCT failed to file lawsuits on behalf

2  of Midland, its California client, missing statutory deadlines, which resulted in further

3  injury to Midland at its California headquarters.  Frary Dec., ¶ 13.  This action directly

4  relates to TCT's business dealings with companies in California (Midland among

5  them) and injuries that TCT inflicted upon those companies in California.  Thus, this

6  lawsuit directly relates to the parties' contacts with California and this factor also

7  weighs in favor of maintaining the case in its current forum.

8  **6.  The cost of litigating in San Diego is not grounds to set aside**

9  **the forum selection clause**

10  While it may be somewhat more costly for TCT to litigate in multiple forums,

11  TCT is already litigating in two other separate forums—the Northern District of

12  Georgia and the Fulton County Superior Court in Georgia.  Thus, TCT will have to

13  litigate in multiple forums regardless of whether this case is transferred.  Further,

14  federal courts have expressly rejected the notion that the expense of having to litigate

15  in multiple forums is a sufficient ground to overcome a forum selection clause.

16  *JPMorgan Chase Bank, N.A. v. Coverall N. Am., Inc.*, 2009 WL 1531779, at *4 (N.D.

17  Ohio June 1, 2009) ("Federal courts have rejected the argument that considerations of

18  judicial economy, and the inconvenience and financial hardship of having to litigate

19  claims in different forums, should overcome the parties' forum selection clause."); *P*

20  *& S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The

21  financial difficulty that a party might have in litigating in the selected forum is not a

22  sufficient ground by itself for refusal to enforce a valid forum selection clause.").

23  Thus, the cost of litigation factor also weighs in favor of maintaining this case here in

24  San Diego, California.

25  //

26  //

27  //

28

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
DOCSLA-45815v07

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.  TCT has identified no witnesses for whom compulsory process is needed

TCT has identified no nonparty witnesses in connection with this motion. Thus, there is no evidence before this Court that compulsory process will be necessary in Georgia.  Further, we can assume that employees of TCT will cooperate with their employer's trial efforts.  *See FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993) ("[I]t is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily.").  And, even if TCT at some point locates a nonparty witness in Georgia, the parties can get a commission from a Georgia court to take the witness's deposition there.  Fed. R. Civ. Proc. 45(b)(2).  At this point, however, TCT has not even identified any non-party witnesses with sufficient particularity to merit consideration here.  Thus, this factor weighs in favor of maintaining this lawsuit in this Court.

### 8.  TCT has not demonstrated that a majority of documents and witnesses are in Georgia, nor can it do so

When a party's section 1404(a) motion is based on the location of records and documents, the party "must show particularly the location, difficulty of transportation, and the importance of such records."  *Bohara*, 390 F. Supp. 2d at 963.  TCT has provided no concrete or admissible evidence in support of its motion regarding the location of records or documents or regarding the difficulty of transporting relevant records or documents to California.  See Plaintiffs' Obj.  Thus, yet again, TCT has not adduced the requisite evidence in support of its motion, and the motion to transfer should be denied.

Moreover, TCT could not show that the bulk of the documentary evidence relevant to this litigation is in Georgia.  Midland obtained more than 30 boxes of TCT files regarding Midland in connection with its audit of TCT.  Frary Dec., ¶ 10.  These files are now physically located at Midland's office in San Diego, California.  *Id.*  The

files include checks that TCT prepared for court fees that are still attached to the documents that were supposed to be filed, but never were filed. *Id.* This key evidence is in San Diego, along with copies of all correspondence between TCT and Midland and the relevant collection agreements. *Id.*

TCT's files regarding Midland's accounts are now in California, and TCT has presented no evidence that it has records in Georgia that Midland does not possess at its headquarters in San Diego. Nor should it have such records because, pursuant to the 2006 Collection Agreement, Midland requested that account information and pleadings be sent to Midland upon termination of TCT's representation, and TCT was obligated to provide Midland with those documents. Frary Dec., ¶ 17, Ex. D; California Rules of Professional Conduct, Rule 3-700(D)(1). Additionally, many of the accounting records that demonstrate Midland's damages are located at Midland's San Diego office. Frary Dec., ¶ 14.

TCT has similarly provided no concrete or admissible evidence in support of its motion regarding the location of witnesses. A party moving to transfer based on the convenience of witnesses "must name the witnesses it wished to call, the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara,* 390 F. Supp. 2d at 963. Yet, TCT cites no evidence in support of its assertion that "many potential witnesses" would have to travel "all the way to California" if this case is not transferred. Def. Mem., at 7-8. This complete failure to cite supporting evidence is fatal to TCT's motion. Further, Midland cannot conceive of any reason why "many potential witnesses" could exist in Georgia. And as noted above, TCT has not named any specific nonparty witnesses in Georgia.

In contrast, in its opposition to TCT's motion, Midland has submitted a list of a number of potential witnesses located in the San Diego, California area in its statement of facts, and has listed these potential witnesses with the anticipated areas of

1    their testimony in Mr. Frary's declaration.  Frary Dec., ¶ 15.  As the list of witnesses

2    in Mr. Frary's declaration makes clear, TCT's baseless assertion that Midland would

3    only need one "corporate representative" at trial is false.  Def. Mem., at 7.  Instead,

4    Midland has identified 13 potential witnesses, all of whom reside in the San Diego

5    area and have potentially relevant information.  Frary Dec., ¶ 15.

6            Based on the evidence presented by the parties, greater access to sources of

7    proof exists here in the Southern District of California, where the majority of

8    documents and witnesses are located.  Therefore, this factor also weighs in favor of

9    maintaining this lawsuit in the Southern District of California.

10           **9.  Judicial economy and the interests of justice also weigh in**

11                **favor of maintaining this action in California**

12                **a.     Judicial Economy**

13           Courts also consider judicial economy and the interests of justice when

14   evaluating a transfer motion.  *See Strigliabotti v. Franklin Resources, Inc.*, 2004 WL

15   2254556, at *7 (N.D. Cal. Oct. 5, 2004) (courts weigh convenience against local

16   interest in the controversy, court congestion, and interest in judicial economy).  TCT

17   argues that the case should be transferred because two other civil actions are pending

18   in Georgia involving similar allegations.  While two cases are pending in Georgia, one

19   is in federal court and one is in state court.  TCT's Request for Judicial Notice in

20   Support of Defendant's Motion to Transfer Venue, ¶¶ 2-3, Exs. B and C.  This makes

21   consolidation considerably less feasible.  In any event, the fact that parallel litigation

22   exists elsewhere is not sufficient to deprive Midland of the benefit of the forum

23   selection clause it bargained for, *i.e.,* to have its disputes resolved in San Diego,

24   California.  *See, e.g., Blackman v. Park W. Galleries, Inc.*, 2009 WL 1174639 (W.D.

25   Wash. Apr. 29, 2009) (court denied a motion to transfer in Washington, despite

26   parallel litigation across the country in Florida).

27

28

DICKSTEIN
SHAPIRO LLP

1    Moreover, TCT has entered into forum selection clauses in different parts of the

2    country under different agreements.  RFJN, ¶ 3, Ex. 3 at Exhibit A p. 5.  It must,

3    therefore, have been foreseeable to TCT, when it entered into an agreement containing

4    a forum selection clause, that TCT would potentially have to litigate cases in different

5    forums at the same time.  *Fred Lurie Assocs, Inc. v. Global Alliance Logistics, Inc.*,

6    453 F. Supp. 2d 1351, 1357 (S.D. Fla. 2006) ("In short, because Plaintiff entered into

7    two agreements with different forums selected, the possibility that it would have to

8    litigate claims relating to its shipment in different forums was certainly a foreseeable

9    outcome for Plaintiff."); *St., Sound Around Elecs., Inc. v. M/V Royal Container*, 30 F.

10   Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple parallel proceedings

11   was a contingency entirely foreseeable to plaintiff when it agreed to the forum

12   selection clause.").  Thus, the existence of parallel litigation in two different courts in

13   Georgia should not counterbalance the many factors that support maintaining this

14   action in San Diego.

15   As at least one court has recognized, "[r]efusing to enforce a forum selection

16   clause on [the basis of parallel litigation] would undermine whatever measure of

17   certainty such clauses bring." *St., Sound Around Elecs.,* 30 F. Supp. 2d at 663.

18   Therefore, even if TCT were able to show that all of the cases against it could be

19   litigated in one court (which TCT cannot), judicial economy would not outweigh the

20   parties' forum selection clause.  *La Fondiaria Assicurazione, S.P.A. v. Ocean World

21   Lines*, *Inc.*, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) ("[I]t might be more

22   efficient to dispose of the entire case in one court, but that is not the standard for

23   overcoming a forum selection clause.").

            **b.    Interests of Justice**

24

25   The interests of justice also favor maintaining this lawsuit in San Diego.  In

26   evaluating the interests of justice, courts consider court congestion in the subject

27   forums, and the local interest in the resolution of the dispute. *Strigliabotti,* 2004 WL

28

DICKSTEIN
SHAPIRO LLP            PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
                                                          DOCSLA-45815v07

2254556, at *7 (courts weigh convenience against local interest in the controversy and court congestion); *Decker*, 805 F.2d at 843 (in evaluating transfer motions, courts also consider "administrative difficulties flowing from court congestion"). The Southern District of California is less congested than the Northern District of Georgia. *See* RFJN, ¶ 4, Ex. 4. According to the 2008 Federal Court Management Statistics, in the Northern District of Georgia, the median time for a case to get from filing to trial is a full 30.5 months (almost 2 1/2 years). *Id.* The median time from filing to trial in the Southern District of California is 25.5—a full five months less. *Id.* The case will likely be tried more quickly here in the Southern District of California. Therefore, this factor also weighs in favor of keeping this lawsuit in this Court.

California also has a strong interest in providing a forum for its residents to resolve their disputes, especially when, as here, California law is at issue. *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002) ("California has a strong interest in providing a forum for its residents and citizens who are tortiously injured); *Fed. Deposit Ins. Corp. v. British-American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) ("If California law governed the dispute, California would have a substantial interest in adjudicating it."). Because the contract expressly provides that the laws of California shall govern, California has an interest in providing a forum for adjudicating the "tort and contract claims arising from [the] contract subject to its laws and involving a local resident." *First Franklin Fin. Corp. v. Mortgage Acad., Inc.*, 2006 WL 3734624, at *2 (N.D. Cal. Dec. 18, 2006); *see also Lettieri v. Equitable Life Assurance Soc'y of U.S.*, 627 F.2d 930, 933 (9th Cir. 1980) ("California has an interest in the rights of local plaintiffs.").

## IV.   CONCLUSION

The parties in this case selected San Diego, California as their chosen forum when they entered into the 2006 Collection Agreement. San Diego, California is also the venue Midland chose when it initiated this lawsuit. TCT attempts to sweep these

DICKSTEIN
SHAPIRO LLP

two key factors aside, asserting that other convenience factors outweigh both the presumption favoring the plaintiff's choice of forum and the parties' mandatory forum selection clause. However, TCT offers bare conclusions as its only "proof" of these assertions. These bare conclusions fall far short of the concrete and specific evidence necessary to establish exceptional circumstances warranting transfer in the face of a mandatory forum selection clause. Thus, the parties' forum selection clause—and plaintiffs' choice of forum—should control and this lawsuit should proceed here in the Southern District of California. Accordingly, Midland respectfully requests the Court to deny TCT's motion to transfer.

DATED: November 23, 2009          DICKSTEIN SHAPIRO LLP

                                  By: s/Steven P. Inman, II
                                  Attorneys for Plaintiffs
                                  E-Mail: inmans@dicksteinshapiro.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................1

II.   STATEMENT OF FACTS ................................................................................2

   A.   The Collection Agreements ...................................................................2

   B.   The Audit that Led to this Lawsuit ........................................................3

   C.   The Instant Lawsuit ...............................................................................3

III.  TRANSFER TO GEORGIA WOULD BE IMPROPER AND CALIFORNIA
     IS THE MOST CONVENIENT FORUM FOR THIS LAWSUIT .......................4

   A.   TCT Has Not Met the Heavy Burden of Establishing that the Parties' Forum
      Selection Clause Should Not Be Enforced ............................................5

   B.   The Northern District of Georgia Is an Improper Forum for Midland's
      Lawsuit Against TCT ............................................................................9

   C.   TCT Has Failed to Demonstrate That the Factors Regarding the Convenience
      of Parties and Witnesses and the Interests of Justice Weigh in Favor of
      Transfer; They Instead Weigh in Favor of Maintaining the Action in
      California ................................................................................................9

     1.   TCT has provided insufficient evidence of inconvenience to overcome the
        substantial weight given to a plaintiff's choice of forum ............................11

     2.   The relevant agreements were negotiated and executed in the parties'
        respective locations .....................................................................................12

     3.   California is the state that is most familiar with the governing law ...........12

     4.   Both parties have significant contacts with California ...............................13

     5.   This action relates to the parties' contacts with California ........................14

     6.   The cost of litigating in San Diego is not grounds to set aside the forum
        selection clause ...........................................................................................15

     7.   TCT has identified no witnesses for whom compulsory process is needed 16

i

DICKSTEIN
SHAPIRO LLP

8.   TCT has not demonstrated that a majority of documents and witnesses are in Georgia, nor can it do so .......................................................................... 16

9.   Judicial economy and the interests of justice also weigh in favor of maintaining this action in California ........................................................... 18

   a.   Judicial Economy ...................................................................... 18

   b.   Interests of Justice ..................................................................... 19

IV.   CONCLUSION ................................................................................ 20

DICKSTEIN
SHAPIRO LLP

1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

2

3      <u>Cases</u>

4      *Blackman v. Park W. Galleries, Inc.*,
5          2009 WL 1174639 (W.D. Wash. Apr. 29, 2009) ...............................................18

6      *Bohara v. Backus Hosp. Med. Benefit Plan*,
7          390 F. Supp. 2d 957 (C.D. Cal. 2005)...................................................10, 16, 17

8      *Cardozo v. T-Mobile USA, Inc.*,
9          2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ....................................................11

10     *Chudner v. TransUnion Interactive, Inc.*,
11         626 F. Supp. 2d 1084 (D. Or. 2009) ....................................................................5

12     *Decker Coal Co. v. Commonwealth Edison Co.*,
13         805 F.2d 834 (9th Cir. 1986) .......................................................................11, 20

14     *DIRECTV, Inc. v. EQ Stuff, Inc.*,
15         207 F. Supp. 2d 1077 (C.D. Cal. 2002) ............................................................10

16     *Dole Food Co. v. Watts*,
17         303 F.3d 1104 (9th Cir. 2002) ...........................................................................20

18     *eBay Inc. v. Digital Point Solutions, Inc.*,
19         608 F. Supp. 2d 1156 (N.D. Cal. 2009)...............................................................8

20     *Fed. Deposit Ins. Corp. v. British-American Ins. Co.*,
21         828 F.2d 1439 (9th Cir. 1987) ...........................................................................20

22     *Ferens v. John Deere Co.*,
23         494 U.S. 516 (1990)............................................................................................13

24     *First Franklin Fin. Corp. v. Mortgage Acad., Inc.*,
25         2006 WL 3734624 (N.D. Cal. Dec. 18, 2006) ..................................................20

26     *Fred Lurie Assocs, Inc. v. Global Alliance Logistics, Inc.*,
27         453 F. Supp. 2d 1351 (S.D. Fla. 2006)...............................................................19

28     *FUL, Inc. v. Unified Sch. Dist. No. 204*,
           839 F. Supp. 1307 (N.D. Ill. 1993)....................................................................16

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

DOCSLA-45815v07

DICKSTEIN
SHAPIRO LLP

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) .................................................................11

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) ......................................................................9

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir. 1989) .............................................................8, 14

*Jet Innovations v. Ross*,
   2009 WL 2984850 (C.D. Cal. Sept. 14, 2009)......................................6, 7

*Jones v. GNC Franchising, Inc.*,
   211 F. 3d 495 (2000) ..................................................................5, 7, 10, 14

*JPMorgan Chase Bank, N.A. v. Coverall N. Am., Inc.*,
   2009 WL 1531779 (N.D. Ohio June 1, 2009) ..........................................15

*Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*,
   408 F.3d 1250 (9th Cir. 2005) ...................................................................9

*La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*,
   2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002)........................................19

*Lettieri v. Equitable Life Assurance Soc'y of U.S.*,
   627 F.2d 930 (9th Cir. 1980) ("California has an interest in the rights of
   local plaintiffs.") ......................................................................................20

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)........................................................................................7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) .................................................................5, 8

*P & S Bus. Machs., Inc. v. Canon USA, Inc.*,
   331 F.3d 804 (11th Cir. 2003) ..................................................................15

*Pac. Car & Foundry Co. v. Pence*,
   403 F.2d 949 (9th Cir. 1968) ...................................................................13

*Panetta v. SAP Am., Inc.*,
   2005 WL 1774327 (N.D. Cal. July 26, 2005) ...........................................8

iv

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
741 F.2d 273 (9th Cir. 1984) .................................................................5

*Sec. Investor Prot. Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985) ...........................................................10

*St., Sound Around Elecs., Inc. v. M/V Royal Container*,
30 F. Supp. 2d 661 (S.D.N.Y. 1999) ..................................................19

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) (Kennedy, J., concurring) .....................................5

*Strigliabotti v. Franklin Resources, Inc.*,
2004 WL 2254556 (N.D. Cal. Oct. 5, 2004) .............................18, 19

*Tidemann v. Schiff*,
2002 U.S. Dist. LEXIS 25372 (D. Minn. December 18, 2002) ........13

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)............................................................................13

## Statutes

California Rules of Professional Conduct
Rule 3-700(D)(1) ................................................................................17

Federal Rules of Civil Procedure
45(b)(2) ..............................................................................................16

United States Code
18 U.S.C. § 1404(a) .....................................................................passim

## Other Authorities

Hon. William W. Schwarzer, et al., California Practice Guide: Federal Civil
Procedure Before Trial, § 4:760 (2007) ............................................11

Case No. 09-CV-2187 H (RBB)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
DOCSLA-45815v07