1  Kirk Pasich (CA State Bar No. 94242)
   pasichk@dicksteinshapiro.com
2  Steven P. Inman, II (CA State Bar No. 227748)
   inmans@dicksteinshapiro.com
3  DICKSTEIN SHAPIRO LLP
   2049 Century Park East, Suite 700
4  Los Angeles, CA 90067
   Telephone: (310) 772-8300
5  Facsimile: (310) 772-8301

6  Attorneys for Plaintiffs Midland Credit Management, Inc.;
   Midland Funding, LLC; MRC Receivables Corporation; and
7  Midland Funding NCC-2 Corporation

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  MIDLAND CREDIT MANAGEMENT,      Case No. 09-CV-2187 H (RBB)
    INC., a Kansas corporation; MIDLAND
13  FUNDING, LLC, a Delaware limited    Hon. Marilyn L. Huff
    liability company; MRC RECEIVABLES
14  CORPORATION, a Delaware          **PLAINTIFFS' REQUEST FOR**
    corporation; and MIDLAND FUNDING  **JUDICIAL NOTICE IN**
15  NCC-2 CORPORATION, a Delaware    **SUPPORT OF OPPOSITION TO**
    corporation,                      **MOTION TO TRANSFER**
16                                    **VENUE**
                Plaintiffs,
17                                    [Filed concurrently with Plaintiffs'
        vs.                           Opposition to Defendant's Motion to
18                                    Transfer Venue; Declaration of Brian
    TRAUNER, COHEN & THOMAS, LLP,     Frary in Support of Plaintiffs'
19  a Georgia limited liability partnership,  Opposition to Defendant's Motion to
    and Does 1 through 10,            Transfer Venue; and Plaintiffs'
20                                    Evidentiary Objections to the
                Defendants.          Declaration of Russell S. Thomas]
21
                                     Date:       December 7, 2009
22                                   Time:       10:30 a.m.
                                     Courtroom:  13
23
                                     Complaint Filed: September 4, 2009
24

25

26

27

28

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO
MOTION TO TRANSFER VENUE

Pursuant to Federal Rule of Evidence 201(b), Plaintiffs Midland Credit Management, Inc., Midland Funding, LLC, MRC Receivables Corporation, and Midland Funding NCC-2 Corporation, hereby ask this Court to take judicial notice of the following exhibits:

1.    Complaint in the matter of *L Ray Locke v. Trauner, Cohen & Thomas, LLP*, Case No. 08-CV-1165 J (RBB), filed on June 30, 2008 in the United States District Court for the Southern District of California, a true and correct copy of which is attached hereto as Exhibit 1.

2.    Complaint in the matter of *Timothy Gonzalez v. Trauner, Cohen, & Thomas LLP*, Case No. 09-CV-2803, filed on April 22, 2009 in the United States District Court for the Central District of California, a true and correct copy of which is attached hereto as Exhibit 2.

3.    Complaint and Exhibit A to Complaint in the matter of *NCO Financial Systems, Inc. v. Trauner, Cohen & Thomas, L.L.P.*, Case No. 09-CV-1787, filed July 1, 2009 in the United States District Court for the Northern District of Georgia, a true and correct copy of which is attached hereto as Exhibit 3

4.    Federal Court Management Statistics for the United States District Court for the Northern District of Georgia and the United States District Court for the Southern District of California from the Administrative Office of the U.S. Courts website, located at http://www.uscourts.gov/fcmstat/index.html.  True and correct copies of spreadsheets obtained from the Administrative Office of the U.S. Courts website that contain the statistics are attached hereto as Exhibit 4.

DATED:  November 23, 2009        DICKSTEIN SHAPIRO LLP


By: _____
          Steven P. Inman, II
          Attorneys for Plaintiffs
          E-Mail:  inmans@dicksteinshapiro.com

1

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO
MOTION TO TRANSFER VENUE

# EXHIBIT 1

1    LAW OFFICES OF DEBORAH L. RAYMOND
     Deborah L. Raymond, SBN 173528
2    445 Marine View Avenue, Suite 305
     Del Mar, CA 92075
3    (858) 481-9559
     draymond@lawinfo.com
4

5    Attorney For Plaintiff, L RAY LOCKE

**FILED**

JUN 3 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY             DEPUTY

6

7

8

9               UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA

10

11    L RAY LOCKE, an individual,

     Case No.

12        Plaintiff,

     **'08 CV 1165 J RBB**

13    vs.

     COMPLAINT FOR DAMAGES BASED
     UPON VIOLATIONS OF THE FAIR DEBT
     COLLECTION PRACTICES ACT; THE

14    TRAUNER, COHEN & THOMAS, L.L.P. ,
     CALIFORNIA ROSENTHAL ACT;
15    an entity of unknown form; JEFFREY
     INTENTIONAL INFLICTION OF
     BUFFORD, an individual; MS. "JANE DOE"
     EMOTIONAL DISTRESS; AND
16    BUTLER, an individual; and DOES 1-10,
     **DEMAND FOR JURY TRIAL**
     inclusive,
17

     [15 U.S.C. §§1692 et seq.; Cal. Civ. Code
18        Defendant(s).
     §§1788 et seq ]

19

20

21         Plaintiff, L RAY LOCKE ("Plaintiff" or "Locke") complains as follows against

22    defendants TRAUNER, COHEN & THOMAS, LLP ("TCT"), JEFFREY BUFFORD ("Bufford"), and

23    MS. "JANE DOE" BUTLER ("Butler") (collectively referred to as "Defendants") :

24                       **INTRODUCTION**

25         1. This Complaint is filed under the Fair Debt Collection Practices Act, 15 U.S.C.

26

*ORIGINAL*

§§1692 et seq. (hereinafter called "FDCPA") and the California Rosenthal Act, Cal. Civ. Code §§1788 et seq. pursuant to defendants use of abusive, deceptive, and unfair debt collection practices. **Plaintiff demands a jury trial.**

<u>**JURISDICTION**</u>

2. Jurisdiction of this court arises under 15 U.S.C. Section 1692k(d) and 28 U.S.C. Sections 1331, 1337, and under the doctrine of pendant jurisdiction as set forth in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966).

<u>**PARTIES**</u>

3. Plaintiff is a natural person, and at all times mentioned in this complaint was a resident of the County of San Diego, in the Southern District of California.

4. Plaintiff is informed and believes, and thereon alleges that defendant TCT is an entity of unknown form conducting business in the county of San Diego, State of California. Plaintiff is further informed and believes, and thereon alleges that TCT is engaged in the business of collecting consumer debts and regularly collects consumer debts. TCT is accordingly a "debt collector" as defined in the FDCPA, 15 U.S.C. §1692A(6).

5. Plaintiff is informed and believes, and thereon alleges that defendant BUFFORD is an individual conducting business in the county of San Diego, State of California. Plaintiff is further informed and believes, and thereon alleges that BUFFORD is engaged in the business of collecting consumer debts and regularly collects consumer debts. BUFFORD is accordingly a "debt collector" as defined in the FDCPA, 15 U.S.C. §1692A(6) and as defined in the Rosenthal Act, Cal. Civil Code §1788.2.

6. Plaintiff is informed and believes, and thereon alleges that defendant BUTLER is an individual conducting business in the county of San Diego, State of California. Plaintiff is further

Locke v. Trauner, Cohen & Thomas L.L.P. et al.
Case No.                                                 2                                        COMPLAINT

1    informed and believes, and thereon alleges that BUTLER is engaged in the business of collecting

2    consumer debts and regularly collects consumer debts. BUTLER is accordingly a "debt collector" as

3    defined in the FDCPA, 15 U.S.C. §1692A(6) and as defined in the Rosenthal Act, Cal. Civil Code

4    §1788.2.

5          7.  Plaintiff is unaware of the true names and capacities of defendants sued herein as

6    Does 1 through 10, inclusive.  Plaintiff is informed and believes and thereon alleges that each

7    fictitiously named defendant was in some way responsible for the matters and things complained of

8    herein, and in some fashion, has legal responsibility therefore.  When the true names and capacities

9    of each said fictitiously named defendant has been ascertained, Plaintiff will seek leave to amend this

10   complaint and all proceedings herein to set forth the same.

11   

12         8.  Plaintiff is informed and believes, and thereon alleges, that at all times herein

13   mentioned, each of the defendants were the officers, directors, agents, assignees, assignors or

14   employees of each of their co-defendants and that in doing the things alleged in this complaint were

15   acting within the course and  scope of such capacity, with the full knowledge and consent of their co-

16   defendants, and each of them.

17   

18   ### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19         9. Prior to July 2007, Plaintiff was designated an authorized user on a Bank of America

20   account (the "account") with his step father, Clarence A. Thompson.  In early 2007, the account

21   became delinquent.

22         10.  On or about July 2, 2007, Plaintiff received a telephone message from defendant

23   Bufford stating that Plaintiff owed money and demanding that Plaintiff call back.

24         11.  On or about July 6, 2007, defendant Butler left a message on Plaintiff's work voice

25   mail to call her back.  Plaintiff did not know who Bufford or Butler were, so he did not call them back

26

1 right away.

2       12. On July 16, 2007, defendant Butler telephoned Plaintiff at work and immediately

3 asked Plaintiff, "what are you gong to do about the debt you owe to Bank of America." Plaintiff told

4 defendant Butler that he was at work in a meeting and couldn't talk, and he would call her back.

5 Defendant Butler continued to tell Plaintiff that it was important and that Plaintiff was leaving her

6 with no choice but to give the account to the attorneys. Plaintiff, again, told defendant Butler that he

7 could not talk and he would call her back. After Plaintiff's work meeting, Plaintiff called defendant

8 Butler back at TCT. Defendant Butler told Plaintiff that he had to pay $11,000.00 to the Bank of

9 America account. Plaintiff told defendant Butler that he could not pay $11,000.00; however, after

10 further demands and threats from defendant Butler, Plaintiff stated that he would pay $10,000.00.

11 Then, defendant Butler demanded Plaintiff's bank information. Plaintiff did not want to give

12 defendant Butler his bank information because he was going to send a check; however, defendant

13 Butler insisted and Plaintiff gave her the information.

14       13. On July 17, 2007, defendant Butler called Plaintiff's cell phone and told Plaintiff

15 that Bank of America wouldn't go for the $10,000.00 payment and that they wanted $16,000.00 now.

16 Plaintiff was very upset and confused, but after further demand and threats, Plaintiff stated that he

17 could give $13,000.00. Defendant Butler told him "no" and stated that he had to pay at least

18 $14,000.00. Not knowing what to do, Plaintiff said okay to $14,000.00.

19       14. After thinking about defendant Butler's excessive demands, on July 19, 2007,

20 Plaintiff faxed and mailed a dispute letter, demanded verification, and informed defendant Butler that

21 she nor anyone on her behalf was authorized to withdraw funds from Plaintiff's bank account.

22 Plaintiff's dispute letter was received by TCT on July 20, 2007. A copy of Plaintiff's disputed letter

23 is herein attached and incorporated by reference as Exhibit "A".

15. On July 20, 2007, defendant Butler left messages on Plaintiff's home phone voicemail, Plaintiff's cell phone voicemail, and Plaintiff's work phone voicemail.

16. On July 23, 2007, defendant Butler left messages on Plaintiff's work voicemail and cell phone voicemail. Additionally, on July 23, 2007, Plaintiff received the first and only letter from TCT, which was dated July 09, 2007 with no postmark.

17. On July 24, 2007, defendant Butler left a message on Plaintiff's work phone voicemail. Then, at approximately 7:45 p.m., defendant Butler call Plaintiff's 74 year old mother and told her that Plaintiff's check bounced on insufficient funds and that Plaintiff's mother's house would be taken if $14,000.00 was not paid. Plaintiff's mother telephoned Plaintiff, and was crying, upset, and angry at Plaintiff. Plaintiff's brother was also called by TCT and asked how to get a hold of Plaintiff. When Plaintiff's brother asked what the call was about, he was told that Plaintiff owed money. Plaintiff's brother refused to provide any information.

18. On July 25, 2007 at approximately 10:10 a.m., defendant Bufford called and told Plaintiff's mother that it was an important matter and the bill needed to be taken care of. On July 25, 2007, defendant Butler also call and left a message on Plaintiff's home voicemail.

19. On July 28, 2007, defendant Butler called Plaintiff's home number.

20. On July 30, 2007, defendants made calls to Plaintiff's work and cell phones. Again, Plaintiff's brother received a call from TCT requesting how to get a hold of Plaintiff. Plaintiff's brother told the caller that they could not keep calling him. The caller told him, "We are attorneys, we can do anything."

21. On July 30, 2007 at approximately 6:40 p.m., defendant Butler again called Plaintiff's mother and told her that Plaintiff was ripping off $20,000.00 and wrote a $14,000.00 bounced check. Defendant Butler tried to get Plaintiff's mother to pay and threatened Plaintiff's

1   mother that she would be responsible for the account and the bounced check. Again, Plaintiff's

2   mother called Plaintiff, and was very upset and frightened, which in turn upset and frightened Plaintiff.

3       22. On or about August 22, 2007, a second dispute letter and demand for verification

4   was sent through Plaintiff's counsel, by fax and mail to TCT. A copy of the letter dated August 22,

5   2007 to TCT is herein attached and incorporated by reference as Exhibit "B".

6       23. Even though TCT received both Plaintiff's dispute letters and demands for

7   verification, TCT continued to call, demand payment, and harass Plaintiff in an attempt to collect the

8   debt without providing verification.

9       24. Defendants' collection practices and actions have seriously compromised

10  Plaintiff's relationship with his family and caused Plaintiff to suffer severe emotional distress,

11  including but not limited to loss of appetite, frustration, fear, anger, helplessness, humiliation, anxiety,

12  sleeplessness, worry, sadness, and depression.

13

14                         **FIRST CAUSE OF ACTION FOR**

15            **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
                               **(As to All Defendants)**
16                          **(15 U.S.C. §§1692 et seq.)**

17      25. Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through 24

18  above with the same force and effect as if herein set forth.

19      26. Defendants violated the **Fair Debt Collection Practices Act,** including but not

20  limited to the following sections:

21      26.1. Section 1692b: Defendants communicated with third parties on more than one

22  occasion and falsely stated that Plaintiff owed a debt;

23      26.2. Section 1692c: Defendants, knowing that Plaintiff was represented by an attorney,

24  continued to communicate with Plaintiff in an attempt to collect a debt;

25      26.3. Section 1692c: Defendants, in connection with the collection of a debt,

26

Locke v.Trauner, Cohen & Thomas L.L.P. et al.
Case No.                                    6                          COMPLAINT

1  communicated with third parties without prior consent from Plaintiff;

2  26.4. section 1692c: Defendants communicated with Plaintiff at his work at a time that

3  Defendants know or should have known to be inconvenient to Plaintiff;

4  26.5. Section 1692d: Defendants engaged in conduct the natural consequence of which

5  is to harass, oppress, or abuse a person in connection with the collection of a debt;

6

7  26.6. Section 1692d: Defendants engaged in causing a telephone to ring or engaging

8  any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass

9  any person at the called number;

10  26.7. Section 1692e: Defendants used false, deceptive, or misleading representation

11  or means in connection with the collection of a debt;

12  26.8. Section 1692e(2): Defendants used false representations of the character, amount,

13  or legal status of the debt;

14  26.9. Section 1692e(10): Defendants used false representations or deceptive means to

15  collect or attempt to collect a debt or obtain information concerning Plaintiff;

16  26.10. Section 1692f: Defendants used unfair or unconscionable means to collect or

17  attempt to collect a debt;

18

19  26.11. Section 1692f(1): Defendants attempted to collect amounts not permitted by law

20  or contract;

21  26.12. Section 1692g: Defendants failed to provide a validation or dispute notice; and

22  26.13. Section 1692g: Defendants failed to validate the debt and continued their

23  collection efforts.

24  27. As a direct and proximate result of defendants' violations, Plaintiff suffered actual

25  damages, including, but not limited to severe emotional distress, in an amount to be established by

26

Locke v.Trauner, Cohen & Thomas L.L.P. et al.
Case No.                                                   7                                    COMPLAINT

proof at trial (for the purpose of a default judgment, Plaintiff's damages for emotional distress are not less than $50,000.00), and is entitled to actual damages, an award of statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. §1692k.

### SECOND CAUSE OF ACTION FOR
### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### (As to Defendants JEFFREY BUFFORD and MS. "JANE DOE" BUTLER ONLY)
### (Cal. Civ. Code §§1788 et seq.)

28. Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through 27 above with the same force and effect as if herein set forth.

29. Defendants violated the **Rosenthal Act**, including but not limited to the following sections:

29.1. Section 1788.11(d): Defendants caused a telephone to ring repeatedly or continuously to annoy the person called;

29.2. Section 1788.11(e): Defendants communicated by telephone with the Plaintiff with such frequency as to be unreasonable and to constitute an harassment to the Plaintiff under the circumstances;

29.3. Section 1788.13(e): Defendants falsely represented that the debt may be increased by the addition of fees or charges that may not be legally added to the existing obligation;

29.4. Section 1788.14(c): Defendants, after being notified in writing that Plaintiff was represented by an attorney and all communications were to go to the attorney, continued to communicate with Plaintiff in an attempt to collect a debt ; and

29.5. Section 1788.17: Defendants violated provisions of Title 15 of the United States Code sections 1692 et seq.

30. As a direct and proximate result of Defendants' violations, Plaintiff suffered actual damages, including, but not limited to emotional distress, in an amount to be established by proof at

1    trial (for the purpose of a default judgment, Plaintiff's damages for emotional distress are not less than

2    $50,000.00), and Plaintiff is entitled to an award of actual damages, costs, and attorney's fees pursuant

3    to Cal. Civ. Code §1788.30. In addition, Defendants willfully and knowingly violated the Rosenthal

4    Act which entitles Plaintiff to penalty of not less than $100 and not more than $1,000.00 pursuant to

5    Cal. Civ. Code §1788.30(b).

6                          **THIRD CAUSE OF ACTION FOR**

7              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
                          **(As to All Defendants)**
8

9            31. Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through 30

10   above with the same force and effect as if herein set forth.

11           32.  Defendants' conduct was outrageous, intentional, and malicious, and done with

12   reckless disregard of the fact that it would certainly cause Plaintiff to suffer severe emotional distress.

13           33. As a proximate result of the acts of Defendants, Plaintiff suffered severe emotional

14   distress in the form of loss of sleep, loss of appetite, anger, fear, nervousness, humiliation, anxiety,

15   worry, and stress, all to Plaintiff's damage in an amount which will be proven at trial (for the purpose

16   of a default judgment, Plaintiff's damages for emotional distress are not less than $50,000.00).

17           34.  Plaintiff is informed and believes, and thereon alleges that the acts of Defendants

18   were malicious in that they were intended to cause injury to Plaintiff. Plaintiff is further informed and

19   believes, and thereon alleges that such conduct was despicable in that it was carried on by Defendants

20   with a willful and conscious disregard of the rights of Plaintiff and for no purpose other than to

21   oppress Plaintiff and to subject him to cruel and unjust hardship in conscious disregard of Plaintiff's

22   rights, all of which entitles Plaintiff to punitive damages in an amount to be established at trial.

23   ////

24           **WHEREFORE,** Plaintiff Prays for a judgment against Defendants as follows:

25

26

Locke v.Trauner, Cohen & Thomas L.L.P. et al.                    9                    COMPLAINT
Case No.

AS TO THE FIRST CAUSE OF ACTION ONLY

 1)    Statutory Damages of $1,000.00 per violation of the

        Fair Debt Collection Practices Act;

 2)    Attorney's fees pursuant to statute;

AS TO THE SECOND CAUSE OF ACTION ONLY

 3)    Statutory Damages of $1,000.00 per violation of the

        Rosenthal Act;

 4)    Attorney's fees pursuant to statute;

AS TO THE THIRD CAUSE OF ACTION ONLY

 5)    Punitive Damages;

AS TO ALL CAUSES OF ACTION

 6)    Actual Damages according to proof at trial (for the

        purpose of a default judgment, not less than

        $50,000.00);

 7)    Cost of Suit; and

 8)    Such Other Relief As The Court May Order.

Date: 06/30/08

Respectfully submitted,
Law Offices of Deborah L. Raymond

By: _Deborah L. Raymond_

Deborah L. Raymond, Esq.
Attorney For Plaintiff

1                               DEMAND FOR JURY TRIAL

2           Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

3 Civil Procedure.

4 Date: 06/30/08

5                                                  Respectfully submitted,
                               Law Offices of Deborah L. Raymond

6

7

8 By: _____

9                         Deborah L. Raymond, Esq.
                            Attorney For Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Locke v. Trauner, Cohen & Thomas L.L.P. et al.
Case No.                          11                             COMPLAINT

July 19, 2007

L-Ray Locke
7908 Rancho Fanita Dr. Spc. 7
Santee, CA 92071-3453

Trauner, Cohen & Thomas
5901-C Peachtree/Dunwoody Road, Suite 500
Atlanta, GA 30328

Dear Ms. Butler,

You called me several times, at work and on July 16, 2007 and July 17, 2007 you took banking information from me. I do not authorize you or anyone else associated with your office to withdrawal any funds from my account.

I am disputing this debt and request that you provide me with the name of the creditor; the amount of the debt; verification or copy of any judgment (if applicable); and any and all documents that you claim I am responsible for what-so-ever.

Please do call me anymore as I am not allowed to receive personal calls at work.

L-Ray Locke

r2.

EXHIBIT "A"

# FAX

| | | | | |
|---|---|---|---|---|
| TO: | Trauner, Cohen & Thomas | | FROM: | L-Ray Locke |
| FAX: | 9-1-678-547-3915 | | FAX: | |
| PHONE: | 1-888-698-1793 X1617 | | PHONE: | |
| SUBJECT: | Dispute of debt and verification | | DATE: | July 19, 2007 |
| NO. OF PAGES: | Including this fax cover sheet: 2 | | | |
| ATTENTION: | Ms. Lakeisha Butler | | | |

COMMENTS: Ms. Butler,

This fax is being transmitted to inform you that I am disputing the debt you referenced in our phone conversation Monday, July 16, 2007.

Case number: 2461141010

Thank you,

*J-Ray Locke*

L-Ray Locke

13

EXHIBIT "A"



EXHIBIT "A"

14

# EXHIBIT 2

FILED

1  Norman F. Taylor, Esq. (SBN: 127325)
   Stephanie R. Tatar, Esq. (SBN: 237792)
2  **NORMAN TAYLOR & ASSOCIATES**        2009 APR 22  PM 2:37
   425 West Broadway, Suite 220
3  Glendale, California 91204-1269        CLERK U.S. DISTRICT COURT
   (818) 244-3905 Telephone               CENTRAL DIST. O  CALIF.
4  (818) 244-6052 Facsimile                     LOS ANGELES

5  Attorneys for Plaintiff,               BY_____
   TIMOTHY GONZALEZ
6

7             IN THE UNITED STATES DISTRICT COURT
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
8

9  TIMOTHY GONZALEZ,                  )
                                      )
10            Plaintiff,              )
                                      )      **CV09-2803  SVW(CWx)**
11       vs.                          )
                                      )      **Case Action No.:**
12  TRAUNER, COHEN & THOMAS, LLP,     )
                                      )
13            Defendant.              )
                                      )
14 ─────────────────────────────────

15                   **PLAINTIFF'S COMPLAINT**
16
         TIMOTHY GONZALEZ (hereinafter referred to as "Plaintiff"), by his attorneys,
17
   Norman Taylor & Associates, alleges the following against TRAUNER, COHEN &
18
   THOMAS, LLP (hereinafter referred to as "Defendant"):
19

20
                         **I. INTRODUCTION**
21
         1.      Section 1692 of the Fair Debt Collection Practices Act: Congressional
22
   finding and declaration of purpose identifies that "there is abundant evidence of the use
23
   of abusive, deceptive and unfair debt collection practices by many debt collectors.
24
   Abusive debt collection practices contribute to the number of personal bankruptcies, to
25
   marital instability, to the loss of jobs and to the invasions of individual privacy."  15
26
   U.S.C. § 1692(a).  Congress also passed this statute, because the current laws were
27
   "inadequate to protect consumers." 15 U.S.C. § 1692(b)  Moreover, the purpose of
28
   the statute is to "eliminate abusive debt collection practices by debt collectors, to insure

                                  1

1  that those debt collectors who refrain from using abusive debt collection practices are

2  not competitively disadvantaged, and to promote consistent State action to protect

3  consumers against debt collection abuses." 15 U.S.C. § 1692(e)

4

5  ## II. JURISDICTION AND VENUE

6      2.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §

7  1331, 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28

8  U.S.C. § 1367.

9      3.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

10

11  ## III. PARTIES

12      4.     Plaintiff TIMOTHY GONZALEZ is an adult individual residing in Monrovia,

13  California.

14      5.     Defendant TRAUNER, COHEN & THOMAS, LLP, is a limited liability

15  partnership with its principal office located at 5901-C Peachtree Dunwoody Road, Suite

16  500, Atlanta, Georgia 30328, and which is qualified to and regularly conducts business

17  in the State of California.  The principal purpose of Defendant is the collection of debts

18  already in default using the mails and telephone, and Defendant regularly attempts to

19  collect said debts.

20

21  ## IV. FACTUAL ALLEGATIONS

22      6.     At all times pertinent hereto, Defendant was hired to collect a debt

23  relating to consumer purchases (hereafter the "debt").

24      7.     The debt which Defendant attempted to collect pertained to an HSBC

25  credit card and became delinquent in August 2008.

26      8.     The debt at issue arises out of an alleged transaction which was primarily

27  for personal, family or household purposes.

28      9.     On or about December 30, 2008, Plaintiff received a call at work from

2

1   Defendant in an attempt to collect a debt allegedly owed by Plaintiff and to coerce

2   Plaintiff to pay a debt which he allegedly owes.

3        10.   At all pertinent times hereto, and upon information and belief, this

4   telephone call was the initial communication to Plaintiff by the Defendant.  Additionally,

5   upon information and belief, Defendant did not send any written communication to

6   Plaintiff with respect to the alleged debt within five (5) days after the above initial

7   communication.

8        11.   During the telephone call on or about December 30, 2008, Plaintiff

9   instructed Defendant not to call him at work.

10        12.   Following this initial call, on the same date, December 30, 2008,

11   Defendant called Plaintiff's home and spoke with Plaintiff's fiancé.

12        13.   On or about January 7, 2009, Defendant contacted the mother of

13   Plaintiff's fiancé, threatening to file a lawsuit against Plaintiff.

14        14.   Following Defendant's phone call to a third party, Plaintiff's fiancé's

15   mother, on or about January 7, 2009, Plaintiff contacted Ms. Young, a representative,

16   employee and/or agent of Defendant.   Ms. Young threatened to garnish Plaintiff's

17   wages if Plaintiff did not make a payment of $3,700.00, within two (2) hours of the

18   phone call.  Ms. Young also reiterated the threat of a lawsuit.

19        15.   On or about January 7, 2009, Defendant demanded from Plaintiff

20   payment in the amount of $2,006.35.   If payment was not received, Ms. Young

21   threatened to fax paperwork to the Human Resources department at Plaintiff's work, in

22   an attempt to garnish Plaintiff's wages.

23        16.   On or about January 7, 2009, approximately one (1) hour after Plaintiff's

24   phone call with Ms. Young, Defendant demanded from Plaintiff's fiancé payment in the

25   amount of $2,006.35.   If payment was not received, Ms. Young threatened to fax

26   paperwork to the Human Resources department at Plaintiff's work, in an attempt to

27   garnish Plaintiff's wages.

28        17.   On or about January 7, 2009, a representative, employee and/or agent

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

1  from Defendant contacted Plaintiff and made threats of lawsuits in an attempt to coerce

2  payment of the debt with the intent to annoy, harass, and abuse such persons

3  contacted.

4      18.    On or about January 8, 2009, Defendant called Plaintiff at work.  Plaintiff

5  reminded Defendant that, on December 29, 2008, Plaintiff instructed Defendant not to

6  call him at work.

7      19.    During this phone call on or about January 8, 2009, Defendant

8  threatened Plaintiff that "we will continue with what we have planned," and hung up.

9      20.    On or about January 8, 2009, a representative, employee and/or agent

10  from Defendant contacted Plaintiff and made threats of lawsuits in an attempt to coerce

11  payment of the debt with the intent to annoy, harass, and abuse such persons

12  contacted.

13      21.    On or about January 13, 2009, Miss Young called Plaintiff's office at

14  7:46a.m. and again at 8:42a.m., requesting Plaintiff to call her back;

15      22.    On or about January 13, 2009, a representative, employee and/or agent

16  of Defendant caused the telephone to ring repeatedly with the intent to annoy, harass

17  and abuse such persons contacted.

18      23.    On or about January 13, 2009, Plaintiff received written correspondence

19  from Defendant demanding payment.

20      24.    The Defendant acted in a false, deceptive, misleading and unfair manner

21  when it engaged in conduct the natural consequence of which is to harass, oppress, or

22  abuse such person contacted.

23      25.    At all times pertinent hereto, Defendant was acting by and through its

24  agents, servants and/or employees, who were acting within the scope and course of

25  their employment, and under the direct supervision and control of the Defendant

26  herein.

27      26.    At all times pertinent hereto, the conduct of Defendant as well as its

28  agents, servants and/or employees, was malicious, intentional, willful, reckless,

1    negligent and in wanton disregard for federal and state law and the rights of the

2    Plaintiff herein.

3         27.    As a result of Defendant's conduct, Plaintiff has sustained actual

4    damages, including, but not limited to, injury to Plaintiff's reputation, invasion of

5    privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and

6    mental pain and anguish and pecuniary loss and he will continue to suffer same for an

7    indefinite time in the future, all to his great detriment and loss.

8

9         **V. FIRST CLAIM FOR RELIEF - VIOLATION OF THE**

10        **FAIR DEBT COLLECTION PRACTICES ACT**

11        28.    Plaintiff incorporates the foregoing paragraphs as though the same were

12   set forth at length herein.

13        29.    Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the

14   FDCPA.

15        30.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the

16   FDCPA.

17        31.    The    above    contacts    between    Defendant    and    Plaintiff    were

18   "communications" relating to a "debt" as defined by 15 U.S.C. § 1692a(2) and 1692a(5)

19   of the FDCPA.

20        32.    Defendant violated the FDCPA.  Defendant's violations include, but are

21   not limited to, violations of:

22             (a) 15 U.S.C. § 1692e(11), as all communications from Defendant failed

23                 to indicate they were from a debt collector;

24             (b) 15 U.S.C. § 1692g, as Defendant failed to send the consumer a

25                 validation notice within five (5) days of the initial communication;

26             (c) 15 U.S.C. § 1692e(2), as Defendant's communication contained a

27                 false impression of the character, amount, or legal status of the

28                 alleged debt;

5

1        (d) 15 U.S.C. § 1692e(2), as Defendant's communication gave the

2        impression that nonpayment of any debt will result in the garnishment

3        of wages, without Defendant's intention to take sure action;

4        (e) 15 U.S.C. § 1692e(5), as Defendant's communication threatened to

5        take action that is not intended to be taken;

6        (f) 15 U.S.C. §§ 1692e preface and e(10), as Defendant used false,

7        deceptive and misleading representation or means in connection with

8        the debt collection;

9        (g) 15 U.S.C. § 1692f preface, as Defendant used unfair or

10        unconscionable means to collect the alleged debt;

11        (h) 15 U.S.C. § 1692d preface, as Defendant engaged in conduct the

12        natural consequence of which is to harass, oppress, or abuse any

13        person in connection with the collection of the alleged debt;

14        (i) 15 U.S.C. § 1692c(a)(3), as Defendant contacted the Plaintiff's place

15        of employment when the Defendant knew or had reason to know that

16        the consumer's employer prohibits such communications; and

17        (j) 15 U.S.C. § 1692b(2), as Defendant stated in communications with

18        persons other than the Plaintiff consumer that the Plaintiff owes debt;

19

20      33.    Defendant's acts as described above were done with malicious,

21 intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under

22 the law and with the purpose of coercing Plaintiff to pay the alleged debt.

23      34.    As a result of the above violations of the FDCPA, Defendant is liable to

24 Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees

25 and costs.

26      WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

27        (a) That judgment be entered against Defendant for actual damages

28        pursuant to 15 U.S.C. § 1692k(a)(1);

1    (b) That judgment be entered against Defendant for statutory damages

2        pursuant to 15 U.S.C. § 1692k(a)(2)(A);

3    (c) That the Court award costs and reasonable attorney's fees pursuant

4        to 15 U.S.C. § 1692k(a)(3); and

5    (d) That the Court grants such other and further relief as may be just

6        and proper.

7

8    ## VI. SECOND CLAIM FOR RELIEF - VIOLATIONS OF THE

9    ## ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

10   ## CAL.CIV.CODE §1788 *et seq.*

11   35.    Plaintiff incorporates the foregoing paragraphs as though the same were

12   set forth at length herein.

13   36.    Defendant sought to collect a consumer debt which was due and owing,

14   or alleged to be due and owing, from Plaintiff.  Plaintiff is a "debtor" as that term is

15   defined by *Cal. Civ. Code §1788.2(h)*.

16   37.    Defendant is a company that, in the ordinary course of business,

17   regularly, on behalf of itself or others or others, engages in debt collection as that term

18   is defined by *Cal. Civ. Code §1788.2(b),* and is a "debt collector" as that term is defined

19   by *Cal. Civ. Code §1788.2(c)*.

20   38.    Defendant violated the RFDCPA based on the following:

21        a. Defendant violated *§1788.10(e)* of the RFDCPA when Defendant

22           communicated by telephone or in person with the debtor with such

23           frequency as to be unreasonable or constitute harassment.

24        b. Defendant violated *§1788.12(b)* of the RFDCPA when Defendant

25           communicated the debt to other individuals, other than the spouse of

26           the debtor.

27        c. Defendant violated *§1788.12(b)* of the RFDCPA when Defendant

28           falsely represented that a legal proceeding had begun or was about to

7

1          be instituted unless a payment was made.

2          39.    As direct and proximate result of one or more or all of the statutory

3     violations above, Plaintiff has suffered emotional distress.

4

5          WHEREFORE, Plaintiff, TIMOTHY GONZALEZ, respectfully requests judgment

6     entered against Defendant, TRAUNER, COHEN & THOMAS, LLP, for the following;

7          (a)    Declaratory judgment that Defendant's conduct violated the Rosenthal

8                 Fair Debt Collection Practices Act;

9          (b)    Statutory damages pursuant to the Rosenthal Fair Debt Collection

10                Practices Act, *Cal Civ. Code§1788.30(b)*;

11         (c)    Actual damages;

12         (d)    Costs and reasonable attorneys' fees pursuant to the Rosenthal Fair

13                Debt Collection Practices Act, *Cal Civ. Code§1788.30(c)*; and

14         (e)    Any other relief that this Honorable Court deems appropriate.

15

16                        **VII. DEMAND FOR JURY TRIAL**

17         PLEASE TAKE NOTICE that Plaintiff, TIMOTHY GONZALEZ, demands a jury

18    trial in this case.

19

20                                         Respectfully Submitted,

21    DATED: March 21, 2009               **NORMAN TAYLOR & ASSOCS.**

22

23                              By: _____

24                                         Stephanie Tafar, Esq.
                                           Attorney for Plaintiff,
25                                         TIMOTHY GONZALEZ

26

27

28

                                         8

## VERIFICATION OF COMPLAINT AND CERTIFICATION

### STATE OF CALIFORNIA

Plaintiff, TIMOTHY GONZALEZ, states as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harrass any Defendant(s), cause unecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s) named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. §1746(2), I, TIMOTHY GONZALEZ, hereby verify under penalty of perjury that the foregoing is true and correct.

_SAT 2·21·09_
DATE

_Tim Gonzalez_
TIMOTHY GONZALEZ,
Plaintiff

# EXHIBIT 3

FILED IN CLERK'S OFFICE
U.S. D.C. Atlanta

JUL 0 1 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NCO FINANCIAL SYSTEMS, INC., )
a Pennsylvania corporation, )
 )
              Plaintiff, )         Case No.:
 )
v. )         **1 09-CV-1787**
 )
TRAUNER, COHEN & THOMAS, L.L.P., )
 )
              Defendant. )
_____ )

## COMPLAINT

Plaintiff, NCO Financial Systems, Inc. ("NCO"), submits this Complaint and states as follows:

## PARTIES

1.      NCO is a Pennsylvania company with its principal place of business located in Horsham, Pennsylvania.

2.      Defendant, Trauner, Cohen & Thomas, L.L.P. ("Defendant"), is a limited liability partnership organized under Georgia law. Upon information and belief, all Defendant's partners are citizens of Georgia and reside in or near Defendant's principal place of business, which is located in Atlanta, Georgia.

US2008 731172.5

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  Diversity jurisdiction is present as NCO is a Pennsylvania company, Defendant's partners are citizens of Georgia, and the amount in controversy exceeds $75,000.

4.      Venue lies in the Northern District of Georgia because Defendant resides in this district and the acts and omissions complained of occurred in this district.

5.      The Parties entered into a binding contract that provides in pertinent part:  "The Agreement will be governed by and construed under the laws of the State of Pennsylvania, without regard to the principles of conflict laws.  Any suit arising hereunder shall be brought in a court of competent jurisdiction located in Pennsylvania."  *See* **Exhibit A**, Attorney Network Services Agreement.  At this time, NCO waives the Pennsylvania forum selection clause because all documents and witnesses relevant to this lawsuit are located in Atlanta, Georgia.

## FACTS

6.      NCO is a national debt collection company that provides various collection-related services.  As part of its collection efforts, NCO contracts with attorneys who are experts in filing collections lawsuits to collect on behalf of certain NCO clients.

2

US2008 731172 5

7.    Defendant has represented NCO clients in collection matters for many years.

8.    On August 28, 2007, Defendant, through its managing partner, Russell S. Thomas, entered into a service contract with NCO. *See* Exhibit A (the "Agreement").

9.    Pursuant to the Agreement, Defendant agreed to "diligently pursue the collection of monies due on the referred accounts promptly and in accordance with applicable state and federal law as interpreted in [Defendant's] jurisdiction." *See* Exhibit A, p. 1, ¶ 1.

10.   As part of collection efforts, Defendant often filed legal actions against debtors. Pursuant to the Agreement, court costs were to be advanced by Defendant and billed on a weekly basis to NCO. *See* Exhibit A, p. 1, ¶ 2. NCO would then reimburse these costs if applicable to the terms of representation in that case. *Id.*

11.   Pursuant to the Agreement, unless otherwise specified, Defendant was required to remit to NCO monies collected on a weekly basis. *See* Exhibit A, p. 1, ¶ 3.

3

12.     Defendant agreed to perform all services "in accordance with all applicable state and federal laws as well as applicable Rules of Professional Conduct." *See* Exhibit A, p. 2, ¶ 5.

13.     Defendant also agreed to comply with all of the terms and conditions of the Agreement and NCO's Standard Operating Procedures ("SOP").

14.     As detailed below, Defendant breached the terms of the Agreement and the SOP, breached its fiduciary duties to NCO, and committed fraud in Defendant's handling of NCO's accounts.

15.     Pursuant to the Agreement, ¶ 15, in June 2009, NCO commenced an audit of Defendant's books and records.   The auditor discovered numerous problems relating to Defendant's collection activity, reporting, and financial accounting for the NCO referred files.

16.     NCO's auditor discovered that Defendant reported to NCO that lawsuits were filed when those suits had not been filed.  Defendant sought and received reimbursement for court costs advanced for the non-existent lawsuits.

17.     As evidence of the fraudulent scheme, NCO's auditor discovered approximately 100 checks dating back to 2007 in a cabinet in Defendant's office. These checks were for filing fees on NCO accounts.  Reimbursement was provided

4

to Defendant for these filing fees.  The checks were not signed by Defendant and were never submitted to courts for filing fees.

18.  NCO's auditor also discovered files marked as "lawsuits" in a mail bin at Defendant's office.  The court costs on these accounts totaled $26,667.00. Defendant never filed lawsuits on the accounts contained within this mail bin.

19.  NCO has received information that Defendant used NCO's cost reimbursements to fund Defendant's daily operating expenses.

20.  When Defendant did file lawsuits, NCO believes that Defendant sought reimbursement for costs in excess of the actual filing fees.

21.  Upon information and belief, NCO suspects that Defendant has collected many thousands of dollars on behalf of NCO, which have not been reported or remitted to NCO.

22.  Defendant has received over $1.3 million dollars in cost reimbursements relating to NCO placements since 2007.  A full accounting is necessary to determine the total amount of reimbursements Defendant received fraudulently.

23.  Defendant has purportedly filed over 15,000 lawsuits on accounts placed by NCO since 2007.  A full audit is necessary to determine the total number of lawsuits that were actually filed.

5

24.    As a result of Defendant's fraudulent schemes, misrepresentations, misappropriation of NCO funds and breach of contract, NCO has suffered damages, including, but not limited to, economic losses, damages to its client relationships, and possible liability pursuant to state and federal law.

25.    In addition to Defendant's fraudulent scheme of seeking cost reimbursements for nonexistent lawsuits, Defendant has intentionally or negligently breached other obligations and duties, including failing to properly (1) maintain records of the NCO cases; (2) supervise Defendant's employees; (3) notify NCO as to the status of its cases; and (4) bill and report costs and expenses on all NCO cases.

## FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY

26.    NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

27.    Defendant owes a fiduciary duty to NCO and NCO's clients not to use Defendant's position for Defendant's own benefit, and to the detriment of NCO.

28.    Defendant breached its fiduciary duty as attorneys to NCO and NCO's clients by using Defendant's position to misappropriate funds, fraudulently seek reimbursements, and breach the terms of the Agreement.

6

US2008 7311172 5

29.    NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief, to which it is entitled due to Defendant's breach of its fiduciary duty.

## SECOND CAUSE OF ACTION – FRAUD

30.    NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

31.    Defendant represented to NCO that Defendant would file lawsuits on behalf of NCO's clients and request reimbursement of court costs only if incurred by Defendant.  Defendant further agreed to settle cases on behalf of NCO's clients and remit the funds to NCO.

32.    By submitting bills that seek reimbursement for costs never incurred, Defendant made material representations to NCO that Defendant knew were false.

33.    Defendant also made material representations to NCO that Defendant knew were false by seeking reimbursement from NCO for amounts that exceeded what Defendant actually advanced.

34.    By collecting monies on behalf of NCO's clients and intentionally failing to disclose such collections, Defendant made additional material representations to NCO that Defendant knew were false.

7

35.    Defendant's acts and omissions were done with the intent to mislead NCO and cause NCO to rely on such misrepresentations, which caused NCO and may have caused NCO's clients damages.

36.    NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief, to which NCO is entitled as a result of the fraud.

## **THIRD CAUSE OF ACTION – MONEY HAD AND RECEIVED**

37.    NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

38.    Upon information and belief, Defendant has received and is holding funds that are due and owing NCO.

39.    NCO in equity and good conscience, is entitled to recover such funds from Defendant and hereby demands that Defendant immediately pay such funds that are due and owing NCO.

40.    Defendant is not entitled in good conscience to keep the funds received for NCO's benefit and should be required to refund such funds and profits on such funds to NCO.

8

US2008 731172 5

41. NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief, to which NCO is entitled due to Defendant's acts.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT

42. NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

43. Defendant willfully and intentionally breached the terms of the Agreement by fraudulently reporting that lawsuits were filed that were never actually filed, fraudulently seeking reimbursements for costs not advanced by Defendant, by failing to properly supervise the Defendant's employees, and failing to timely and accurately remit funds owed to NCO.

44. Defendant's breach resulted in NCO sustaining damages.

45. NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief to which NCO is entitled due to Defendant's breach of contract.

## FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

46. NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

9

47.    As a result of Defendant's wrongful conduct, Defendant has been and continues to be unjustly enriched at the expense of and to the detriment of NCO.

48.    NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief, to which NCO is entitled.

## SIXTH CAUSE OF ACTION – NEGLIGENCE AND NEGLIGENT SUPERVISION

49.    NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

50.    Defendant owes a duty of care to NCO not to engage in any conduct that would foreseeably result in financial loss to NCO or result in harm to the business relationships and expected business relationships that NCO enjoyed with NCO's clients.

51.    Defendant also owes a duty of care to NCO to properly supervise Defendant's employees and agents so that such employees and agents do not engage in any conduct that foreseeably would result in harm to the business relationships and expected business relationships that NCO enjoyed with NCO's clients and prospective clients.

52.    Defendant breached its duty of care, which resulted in NCO sustaining damages in an amount to be determined at trial.

10

53.  NCO has suffered damages, including, but not limited to economic losses, damages to its client relationships, and possible liability pursuant to federal and state law.

54.  NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief, to which NCO is entitled.

## SEVENTH CAUSE OF ACTION – RESPONDEAT SUPERIOR LIABILITY

55.  NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

56.  Defendant is responsible for any negligent or wrongful acts and omissions by its employees.

57.  Upon information and belief, Defendant's employees engaged in such conduct that resulted in NCO suffering damages, including, but not limited to, economic losses, damages to NCO's client relationships, and possible liability pursuant to federal and state law.

58.  NCO requests that the Court award NCO damages, reasonable expenses, costs, interest, attorney's fees, and any other relief, including injunctive relief against Defendant as a result of the wrongdoing and/or negligence of Defendant's employees.

11

US2008 7341172 5

## EIGHTH CAUSE OF ACTION – ACCOUNTING

59.     NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

60.     Per Exhibit A, upon the termination of the Agreement, Defendant "shall promptly render an accounting to NCO on each account without compensation." *Id*. at p. 5, ¶ 17.

61.     Upon information and belief, Defendant has breached its obligations to NCO by receiving reimbursements for costs not advanced, failing to timely remit funds collected on NCO's behalf, and failing to timely and accurately report to NCO the status of each account.

62.     As a result of Defendant's wrongful conduct, NCO does not possess the information necessary to calculate the amount owed by Defendant for Defendant's fraudulent reimbursements and failure to remit collections.

63.     An accounting is necessary to determine the amount due to NCO.

## NINTH CAUSE OF ACTION – INJUNCTIVE RELIEF

64.     NCO hereby incorporates the allegations contained in ¶¶ 1-25 of the Complaint as though set forth in full.

65.     Per Exhibit A, "for a period of at least three (3) years or the period required by applicable law, [Defendant] agree[s] to maintain complete and accurate

12

records with respect to each matter handled on behalf of NCO on each account."
*Id.* at p. 5, ¶ 18.

66.   To be able to fully and efficiently establish the extent of the wrongdoing and to determine NCO's damages, NCO must have access to Defendant's books and records, including all of Defendant's case and collection materials for the accounts NCO placed with Defendant, as well as Defendant's financial records.

67.   Upon information and belief, NCO fears that Defendant and/or Defendant's agents and employees, have and are continuing to cover up the wrongdoing by deleting computer data and destroying physical documents.

68.   Pursuant to Rule 65 of the Federal Rules of Civil Procedure, NCO seeks and is entitled to an injunction, enforcing the terms of the executed agreements, including preserving Defendant's records.

69.   To the extent that any Defendant has already breached its duty, NCO is entitled to any and all resulting damages.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, NCO respectfully requests that Defendant be duly cited to appear and respond as appropriate to this Complaint; be ordered to preserve all data, electronic or otherwise, in anyway related to NCO or

13

this case; be ordered to provide an accounting of all funds received by defendants on behalf of NCO; be ordered to pay NCO damages; be ordered to pay NCO reasonable attorneys' fees and costs incurred by NCO in connection with this case, and all other general and equitable relief.

Respectfully submitted, this 1st day of July, 2009.

KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500
(404) 815-6555 – Facsimile
bsingleton@kilpatrickstockton.com
anfrazier@kilpatrickstckton.com

OF COUNSEL:

KILPATRICK STOCKTON LLP
Suite 900
607 14th Street, NW
Washington , DC 20005-2018
(202) 508-5899
(202) 585- 0044 – Facsimile
sbaskin@kilpatrickstockton.com

Burleigh L. Singleton
Georgia Bar No. 649084
Angela N. Frazer
Georgia Bar No. 141239

Counsel for Plaintiff

Stephen E. Baskin

14

US2008 731172 5

**NCO**

## ATTORNEY NETWORK SERVICES AGREEMENT

This Agreement made this _____ day of _____, 200___, between Trauner, Cohen & Thomas, L.L.P. with a principal address of 2880 Dresden Dr. , Atlanta , GA 30341, (herein referred to as "Attorney" "you" or "your") and various creditors and/or debt purchasers (herein referred to as "Client") who have authorized NCO Financial Systems, Inc.'s Attorney Network Services (herein referred to as "we", "our" or "NCO") to retain counsel on their behalf and whose names will be reflected in a separate communication forwarding individual cases to you. Each Client has authorized NCO, as its agent, to engage you to provide legal services on behalf of such Client in connection with the collection of certain account balances owed by various debtors (herein referred to as the "Debtor").

In consideration of the foregoing and the mutual covenants contained herein, the parties hereto agree as follows:

1.      Subject Matter

NCO, on behalf of the Client, hereby retains you to collect monies owed Client on unpaid and delinquent accounts referred to you by NCO during the term of this Agreement. If a conflict of interest precludes your acceptance of a particular matter, you will notify NCO, in writing, of the fact immediately.   You agree to diligently pursue the collection of monies due on the referred accounts promptly and in accordance with applicable state and federal law as interpreted in your jurisdiction. You also agree to comply with NCO's Attorney Network Standard Operating Procedures, attached hereto and incorporated herein by reference as "Attorney Network SOP". NCO reserves the right to amend its Attorney Network SOP at any time with prior written notice to you, and your acceptance of the account or performance of any services on the account forwarded to you will serve as your acceptance of the SOP as amended.

2.      Compensation/Fees

You will be compensated on a contingency basis, the percentage of which is designated in the attached Addendum. NCO reserves the right to change the contingency fee at any time with prior written notice to you. Your acceptance or performance of any services on the accounts forwarded to you will serve as your acceptance of the contingency fee terms stated or as modified.

Court costs shall be advanced by you and billed on a weekly basis to NCO. If applicable to the terms of representation in that case, NCO will reimburse these costs. The first recoveries received by you in any case are to be credited to NCO for the court costs amount previously billed in that case to NCO. Allocation of recoveries is subject to change if so directed by NCO. A contingent fee will not be payable on any account until NCO has been reimbursed its court costs in that case.

Attorney fees may be added to the account balance only if specifically provided for by the applicable credit agreement, and if so authorized, may not exceed the amount of your contingency fee.

All amounts collected from a Debtor must be remitted to NCO in gross, as agent for the Client. **NO DEDUCTION MAY BE MADE FOR FEES, EXPENSES, COURT COSTS OR ANY OTHER AMOUNT.** NCO will, in a timely manner, pay all your fees on the gross remit being posted in our offices and will reimburse you for approved costs and expenses. All payments shall be sent electronically unless prior permission has been obtained from NCO for an alternative method of payment.

1



NCO

You will not be entitled to a fee, contingent or otherwise, for recoveries reported in the first ten (10) days after the account is placed. This does not apply to recoveries received by your office, but only to direct payments reported to you, having been received by NCO, or by the Client directly.

All NSF transactions and payment corrections shall be presented within forty-five days (45) of the original transaction date. NCO will not accept NSF's or corrections and the attorney will not be reimbursed with out prior permission of the client and NCO.

All reimbursement disputes for commission and cost must be presented with sixty (60) days of the transaction. It is the firm's responsibility to reconcile all discrepancies within sixty (60) days. NCO will not review or reimburse transactions that are not presented within sixty (60) days.

3.  Remittance

Unless otherwise specified, all GROSS monies collected for all portfolio accounts including Non Sufficient Funds (NSFs) will be reported in the manner outlined in the Attorney Network Standard Operating Procedures. Remittances should at minimum be conducted weekly, or as otherwise specified by NCO.

4.  Communications with Debtors

NCO reserves the right to review any written communication you deem appropriate to send to a Debtor. NCO reserves the right to review all pleadings prior to filing. Any requirements for advance review of correspondence or pleadings will be specified in a letter referring a particular matter to you.

5.  Compliance with Laws

You agree that you will perform all services for each Client and for NCO in accordance with all applicable state and federal laws as well as applicable Rules of Professional Conduct. You acknowledge that you are familiar with all applicable federal, state and local laws pertaining to the collection of debts and consumer protection (collectively, the "Laws"), including but not limited to the Fair Debt Collection Practices Act (15 U.S.C. §1692, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. §6801, et seq.) the Health Insurance Portability and Accountability Act of 1996 (herein referred to as "HIPAA"), and the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.). You have and will continue to maintain in force and in good standing all insurances, licenses, permits and authority required by any governmental entity to carry on your business and perform your obligations under this Agreement. You shall immediately notify NCO of any action taken by an individual, a regulatory agency, attorney, or court regarding violation of any regulations governing your debt collection practices. Additionally, you will maintain a complete history of complaints (both alleged and valid) and responses that shall be available for review by NCO at any time.

6.  Insurance

During the term of this Agreement, you agree to maintain at your sole expense the below referenced insurance policies. Each policy shall be written with a financially sound and reputable insurer, and who meets with NCO's satisfaction. The below policy limits are intended as minimum threshold amounts, and it shall be your duty to maintain coverage above and beyond these minimum thresholds as is customarily the case in the normal course of business by law firms of similar size and type in your jurisdiction:

a) Errors and Omissions Insurance Policy, in which the limit of aggregate coverage shall be not less than one million dollars ($1,000,000.00),
b) Employee Theft and Dishonesty Blanket Bond, in which the limit of coverage shall not be less than one hundred thousand dollars ($100,000.00),

NCO

    c) Professional Liability Insurance, in which the limit of aggregate coverage shall be not less than one million dollars ($1,000,000.00).

    Each policy of insurance shall name NCO and Client as an additional insured, if requested by NCO, and shall not be canceled or amended for any cause without first giving NCO thirty (30) days prior written notice. A certificate of said insurance shall be delivered to NCO on or before the commencement of this Agreement, or at least ten (10) days prior to the expiration or cancellation of any policy that is replaced.

    Additionally, for purposes of the bonding of claims, you must belong to one of the following:

☐ 1. The National List Of Attorneys
☐ 2. The American Lawyers Quarterly (ALQ)
☐ 3. The General Bar
☐ 4. Other _____

7.    <u>Confidentiality</u>

    You acknowledge that NCO and its Clients deem all information in your possession in connection with this Agreement (herein referred to as "information") and your performance hereunder to be strictly confidential. You acknowledge that NCO's and Client's identity are deemed to be confidential information, which shall not be disclosed to your other clients, but may be disclosed to Debtors in the ordinary course of collection efforts. You agree that you shall hold all information in strict confidence and shall not disclose any such information to any third party without the prior written consent of NCO, nor shall you use such information for any purpose whatsoever except as contemplated hereunder. NCO proprietary systems, including but not limited to eRecoverEase, are considered confidential and must not be shared with any other entity without prior written consent of NCO. This section seven (7) shall survive any termination of this agreement.

    In the event of a violation of the provisions of this section, NCO shall be entitled, in addition to other rights and remedies it may have, to maintain an action for damages and permanent injunctive relief, it being agreed that the substantial and irrevocable damages which NCO would sustain upon any such violation are impossible to ascertain in advance and money damages would not provide an adequate remedy to NCO.

8.    <u>Non-exclusivity</u>

    It is expressly understood and agreed that this Agreement is non-exclusive, that NCO may employ the services of multiple law firms and that NCO may exercise absolute discretion with respect to the accounts referred to you for collection. It is further agreed that, in connection with the performance of this Agreement, any cost, other than usual fees, incurred by you whatsoever, including but not limited to changing your physical location, upgrading computer hardware and software, hiring additional personnel or altering forms used in the collection process shall be borne exclusively by you. You waive any right you may have or which you believe may exist to recover such costs from NCO.

9.    <u>Staff Qualifications</u>

    You warrant that all persons assigned by you to the performance of this contract shall be employees of your firm and shall be fully qualified to perform the work required. You shall include a similar provision in any contract with any Subcontractor selected to perform work under this contract, such Subcontractor being approved, in advance, by NCO.

10.    <u>Nondiscrimination and Workplace Safety</u>

3

# NCO

You agree to abide by all federal, state and local laws, rules and regulations prohibiting discrimination in employment and controlling workplace safety. Any violations of applicable laws, rules and regulations may result in termination of this contract.

11.    Indemnification

You agree to indemnify, defend and hold harmless NCO, the applicable Client, and their respective parent companies, subsidiaries, affiliates, officers, directors, employees and agents from and against any and all claims, causes of action, demands, judicial or administrative proceedings, liabilities, errors, damages, costs and expenses (including court costs and reasonable attorneys' fees) that may arise as a result of your acts or omissions (or those of your employees, Subcontractors, banks or agents), your alleged or actual violations of applicable law in the performance of this Agreement, or your breach of this Agreement.

12.    Electronic Files

In consideration of NCO placing accounts with you, you agree to utilize eRecoverEase in accordance with NCO's Attorney Network Standard Operating Procedures to download new placements assigned, to upload activity updates generated by your collection system on a daily basis, view your inventory and performance analysis and to return accounts.  At all times during the term of this Agreement, NCO shall have access to the files placed with you through eRecoverEase.

13.    Return of Accounts

It is expressly understood and agreed that NCO reserves the right to recall or ask for a return of any account placed with you for any reason whatsoever. At no time shall you have the right to exercise or claim any fees, mechanics or other lien on any account of the proceeds recovered on any account after such account has been recalled by NCO. At no time shall you have an ownership interest in any account placed with you by NCO. Upon notification of return/recall, you shall return to NCO all records originally provided by NCO and/or created by you during collection effort. After the accounts are returned/recalled, you shall be entitled to fee or commission on payments received by NCO after the return date for up to 10 days.  All payments received after that date will not be paid a fee. Direct payments received after the date of recall will not be subject to a fee.

14.    Closing of Cases

For many reasons, a Client will require NCO to close active cases from time to time. In these instances, if NCO is due a fee, your fee will also be protected. However, if for any reason NCO is not entitled to a fee, you likewise will not be due any fee on such account, regardless of the work on the file that may have been performed.

15.    Right to Audit

NCO shall have the right at any time during normal business hours, with or without prior notice, to review, audit and/or copy any and all documents maintained by you in direct relationship to NCO accounts. You agree to cooperate with the designated NCO agent by providing access to all accounts, equipment, telephone and other amenities without charge to NCO.

16.    Non-solicitation

It is expressly understood and agreed that during the period commencing on the date of this Agreement and terminating six (6) months after termination of this Agreement and your return of all accounts to NCO, you shall not directly or indirectly solicit placement of accounts from known clients of NCO. However, if an existing relationship with a known Client of NCO had been established prior to entering into this agreement, said relationship shall not be subject to the non-solicitation terms of this Agreement.

4

# NCO

It is further expressly understood and agreed that during the period commencing on the date of this Agreement and terminating six (6) months after termination of this Agreement and your return of all accounts to NCO, you shall not directly or indirectly solicit current NCO employees for employment.

17.   Term and Termination

The term of this Agreement shall commence on the date herein set forth and shall continue until either party gives the other notice of termination in accordance with the following requirements:

Said notice shall be in writing, and shall be deemed proper if given by personal delivery, overnight courier or certified mail to the address stated below.

*To NCO:*

David R. Schlee, Jr., Esq.
Vice-President,
Attorney Network Services
NCO Financial Systems, Inc.
1804 Washington Blvd.
Dept. 550
Baltimore, MD 21230

*With a Copy to:*

Russell Thomas                                          Joshua Gindin, Esq.
Trauner, Cohen & Thomas, L.L.P.                         Executive Vice President and General Counsel
~~2980 Dresden Dr.~~ 5901. C                            NCO Financial Systems, Inc.
~~Atlanta, GA 30341~~ Peachtree Dunwoody                507 Prudential Road
Suite 500                         Rd                     Horsham, PA 19044
Atlanta, GA 30328

Notwithstanding termination of this Agreement, all rights, obligations and duties incurred under this Agreement by either party, including, but not limited to that which is stated under the Confidentiality section and the Indemnification section, will survive the termination of this Agreement and continue in full force and effect.

Upon termination of this Agreement you shall deliver to NCO a Substitution of Attorney form signed in blank for each account that is in litigation in which you, an agent, Subcontractor or employee, appear as the attorney of record and you shall promptly render an accounting to NCO on each account without compensation.

18.   Books and Records

During and for a period of at least three (3) years or the period of time required by applicable state law, whichever is longer, following the termination of this Agreement, you agree to maintain complete and accurate records with respect to each matter handled on behalf of NCO and Client. You agree to permit Client, NCO, or their agents to review and audit periodically such files during regular business hours with or without prior notice.

19.   Governing Law

The Agreement will be governed by and construed under the laws of the State of Pennsylvania, without regard to the principles of conflict laws. Any suit arising hereunder shall be brought in a court of competent jurisdiction located in Pennsylvania.

5

NCO°

20.   Integration

The Attorney Network Services Agreement, all Addendums, including the Attorney Network Standard Operating Procedures, and any subsequent correspondence referring matters to you and establishing procedures to be followed constitute the entire Agreement between you and NCO, and shall not be changed except by written notice. All provisions found in Addendums shall be deemed incorporated by reference herein and made part of this contract. NCO reserves the right to amend the Attorney Network Services Agreement and any and all Addendums thereto at any time if done so in writing. Every amendment shall specify the date on which its provisions shall be effective.

This contract, in its final composite form, shall represent the entire agreement between the parties and shall supersede all prior negotiations, representations or agreements, either written or oral, between the parties relating to the subject matter hereof. This contract between the parties shall be independent of and have no effect on any other contracts of either party.

21.   Captions

The captions or headings in this contract are for reference only and do not define, describe, extend, or limit the scope or intent of this contract.

22.   Force Majeure

Notwithstanding anything to the contrary contained herein, neither party will be liable to the other for a failure or delay in the performance of its obligations under this Agreement to the extent such failure or delay is caused by an act of God, war, civil disturbance, court order, labor dispute, fire, or other cause beyond its reasonable control such as failures or fluctuations in electrical power, heat, light, telecommunication lines or telephones.

23.   Severability

If any provision of this contract is determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this contract shall not be affected and each provision of this contract shall be enforced to the fullest extent permitted by law. However, that, in such case, the parties will in good faith use their reasonable efforts to achieve the purpose of the invalid provision by agreeing on a substitute provision that is legally enforceable.

24.   Intellectual Property

No trademark, copyright, patent, trade secret, trade dress or any other proprietary right is granted to either party under this Agreement.

25.   Business day defined

A "business day" is any day other than Saturday, Sunday, or a federal holiday.

26.   Relationship of Parties

The relationship of the parties under this Agreement is that of independent agents and not that of employer/employee, principal/agent, partnership, joint venture or representative.

NCO

IN WITNESS WHEREOF, parties hereto have caused this agreement to be executed this
___ day of _____, 200_____.

Firm
Name:   Trauner, Cohen & Thomas, L.L.P.          NCO Financial Systems, Inc.

By:                                              By: _____

        _____                     _____
        Signature                                    Signature
Name:   Russell S. Thomas                        David R. Schlee
Title   Managing Partner                         Vice-President
Date:   8/28/07                                  Date: _____

7

NCO

**Addendum A**
**Schedule of Attorney Fees**
**For**
**Trauner, Cohen & Thomas, L.L.P.**

All future placements will be sent at the following contingency rates:

| | |
|---|---|
| Default | 20% |
| Commercial | 20% |
| Commercial - AIG | 15% |
| Capital One | 25% |
| Discover | 17% |
| Applied Card - SOLRV1 | 30% |
| AmEx - NCOG | 18% |
| AmEx (NCOG) - AMEX1-3 | 10% |
| Minority Legal Network | 20% |
| CapOne - OSI | 23% |
| Resurgent | 25% |
| American Express | 18% |

Dated:    August 2, 2007

8

# EXHIBIT 4

U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE
GEORGIA NORTHERN

|  | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|
| Overall Filings | 5,274 | 4,487 | 4,554 | 4,886 | 5,620 |
| Overall Terminations | 5,077 | 4,560 | 4,898 | 5,692 | 5,370 |
| Overall Pending | 3,726 | 3,505 | 3,574 | 3,890 | 4,649 |
| Last Year % Change in Filings |  | 17.5 |  |  |  |
| % Change in Filings |  |  | 15.8 | 7.9 | -6.2 |
| Number of Judgeships | 11 | 11 | 11 | 11 | 11 |
| Vacant Judgeship Months | 0 | 0 | 5.1 | 3 | 1.6 |
| Per Judgeship Total Filings | 480 | 408 | 415 | 444 | 511 |
| Per Judgeship Civil Filings | 420 | 355 | 353 | 383 | 438 |
| Per Judgeship Criminal Filings | 44 | 38 | 51 | 47 | 55 |
| Per Judgeship Supervised Release Hearings | 16 | 15 | 11 | 14 | 18 |
| Per Judgeship Pending Cases | 339 | 319 | 325 | 354 | 423 |
| Per Judgeship Weighted Filings | 509 | 461 | 500 | 541 | 625 |
| Per Judgeship Terminations | 462 | 415 | 445 | 517 | 488 |
| Per Judgeship Trials Completed | 24 | 23 | 17 | 16 | 20 |
| Median Times to Criminal Disposition | 13.3 | 11.5 | 11 | 11.5 | 8.8 |
| Median Times to Civil Disposition | 6.7 | 7.7 | 9.5 | 10 | 9.3 |
| Median Times to Civil Trial | 30.5 | 27.9 | 31 | 27 | 22 |
| Number of Civil Cases Over 3 Years Old | 97 | 70 | 83 | 83 | 70 |
| Percent of Civil Cases Over 3 Years Old | 3.2 | 2.5 | 2.9 | 2.6 | 1.8 |
| Avg. Felony Defendants Per Case | 1.7 | 1.8 | 1.7 | 1.9 | 1.6 |
| Jurors Present for Selection | 26.62 | 34.11 | 45.86 | 45.85 | 38.96 |
| Juror % Not Selected Or Challenged | 35.2 | 38.6 | 37.6 | 37.6 | 32.1 |

| Type of | TOTAL | A | B | C | D |
|---|---|---|---|---|---|
| Civil | 4621 | 136 | 275 | 1373 | 101 |
| Criminal | 476 | 6 | 56 | 85 | 125 |
|  |  |  | 163 |  |  |

U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE
CALIFORNIA SOUTHERN

| | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|
| Overall Filings | 7,723 | 7,371 | 6,845 | 6,566 | 7,964 |
| Overall Terminations | 8,130 | 7,822 | 6,389 | 6,694 | 8,034 |
| Overall Pending | 4,252 | 3,942 | 3,776 | 3,324 | 3,506 |
| Last Year % Change in Filings | | 4.8 | | | |
| % Change in Filings | | | 12.8 | 17.6 | -3 |
| Number of Judgeships | 13 | 13 | 13 | 13 | 13 |
| Vacant Judgeship Months | 11.8 | 11.6 | 12 | 12 | 9.1 |
| Per Judgeship Total Filings | 594 | 567 | 527 | 504 | 612 |
| Per Judgeship Civil Filings | 204 | 218 | 220 | 208 | 219 |
| Per Judgeship Criminal Filings | 308 | 254 | 209 | 193 | 262 |
| Per Judgeship Supervised Release Hearings | 82 | 95 | 98 | 103 | 131 |
| Per Judgeship Pending Cases | 327 | 303 | 290 | 256 | 270 |
| Per Judgeship Weighted Filings | 445 | 439 | 421 | 387 | 481 |
| Per Judgeship Terminations | 625 | 602 | 491 | 515 | 618 |
| Per Judgeship Trials Completed | 22 | 30 | 23 | 29 | 25 |
| Median Times to Criminal Disposition | 3.9 | 4.3 | 3.9 | 4.2 | 3.3 |
| Median Times to Civil Disposition | 6.2 | 5.9 | 6.6 | 6.3 | 6.9 |
| Median Times to Civil Trial | 25.5 | 24 | 33 | 25.4 | 30 |
| Number of Civil Cases Over 3 Years Old | 133 | 111 | 153 | 138 | 97 |
| Percent of Civil Cases Over 3 Years Old | 6.5 | 5.2 | 6.9 | 7.1 | 4.7 |
| Avg. Felony Defendants Per Case | 1.1 | 1.2 | 1.2 | 1.1 | 1.1 |
| Jurors Present for Selection | 55.28 | 55.77 | 53.64 | 58.66 | 59.13 |
| Juror % Not Selected Or Challenged | 43.3 | 43.5 | 42.2 | 44.5 | 44.5 |
| Type of | TOTAL | A | B | C | D |
| | | | | | |
| Civil | 2650 | 48 | 31 | 978 | 87 |
| Criminal | 3995 | 584 | 335 | 2594 | 41 |
| | | | 130 | | |